Rule 23 Order filed
January 31, 2018;

Motion to publish granted
March 1, 2018;

Opinion filed
March 12, 2018.

2018 IL App (5th) 170036

NO. 5-17-0036

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE VILLAGE OF BELLE RIVE, an Illinois Municipal Corporation, | ) ) ) | Appeal from the Circuit Court of Jefferson County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 16-L-25 |
| ILLINOIS CENTRAL RAILROAD COMPANY, an Illinois Corporation, d/b/a CN, | ) ) ) | Honorable David K. Overstreet, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

JUSTICE MOORE delivered the judgment of the court, with opinion.
Justices Welch and Goldenhersh concurred in the judgment and opinion.

**OPINION**

¶ 1   The plaintiff, the Village of Belle Rive, an Illinois municipal corporation (village), appeals the order of the circuit court of Jefferson County that dismissed its complaint against the defendant, Illinois Central Railroad Company, an Illinois corporation, doing business as CN (railroad). For the following reasons, we affirm.

¶ 2                                     FACTS

¶ 3   The facts necessary to our disposition of this appeal follow. On May 10, 2016, the village filed a three-count complaint in the circuit court of Jefferson County, which is the county in which the village is located. In count I of the complaint, the village requested declaratory relief

1

and alleged, *inter alia*, that (1) on April 21, 1925, the village adopted an ordinance (ordinance) that granted permission to the railroad's predecessor in interest to construct a rail line through the village; (2) on May 8, 1925, the railroad's predecessor in interest accepted the terms of the ordinance, which provided, *inter alia*, that it would construct and "thereafter maintain" three bridges and their accompanying "necessary approaches" over its tracks at Fifth, Tenth, and Thirteenth Streets; (3) under the ordinance, the village agreed to vacate portions of certain streets and alleys to make room for the bridges and approaches and subsequently did so; (4) the ordinance required the railroad to "maintain" the bridges and approaches, which created "a continuing duty" to keep the bridges "in a safe and passable condition for the public," and required the railroad to be responsible for "the entire expense of performing and completing all of the work set forth in" the ordinance; (5) the ordinance "is a contract between" the village and the railroad; (6) the village has in all ways upheld its end of the contract, but the railroad has failed to maintain the bridges and approaches, despite repeated requests from the village to do so; (7) the railroad's failure to maintain has led to the closure of the bridges and "completely obstructed" the ability of the public to "ingress and egress along the streets" where the bridges are located; (8) "[c]onstruction of railroad grade separations and pedestrian bridges over railroad tracks are, in part, subject to the jurisdiction of the Illinois Commerce Commission" (ICC); (9) "[t]he replacement of the 3 bridges would require adherence to current bridge safety standards, but [the railroad] has failed and refused to request or seek to apply and submit plans to the ICC for the bridges" to be replaced; and (10) a study estimates the cost to replace the bridges would be close to $3 million. The relief requested by the village in count I of the complaint included a judgment declaring that, *inter alia*, the ordinance created a perpetual easement in favor of the village over the tracks on the streets in question and the railroad must maintain the bridges at those locations at its sole expense.

2

¶ 4    Count II of the complaint was styled as "Injunction." The relief sought within this count included a judgment in the village's favor in the amount of $3.6 million (which the village estimated would be the actual cost of replacing the three bridges once "engineering, flagging, acquisition costs and legal services" were added to the estimate found in the aforementioned study) and "a permanent injunction requiring [the railroad] to permanently maintain the replacement bridges after constructed at the expense of [the railroad]." Pleading in the alternative, count III, which was styled as "Recission," alleged that the railroad had "materially breached" the terms of the ordinance and that the railroad's "promise to maintain the bridges" constituted "a continuing contractual obligation." The count requested a judgment "rescinding" the ordinance and executing "a judicial deed conveying the land previously vacated" back to the village. All three counts of the complaint also requested "costs of suit" and "such other and further relief as is deemed just." Attached to the complaint as Exhibit A was a copy of the ordinance, as well as a copy of the railroad's predecessor in interest's acceptance of the ordinance; attached as Exhibit B was the "Bridge Location Study" that included the estimate of the cost to replace the three bridges, as well as an "Average Daily Traffic Map" of the village, the latter of which was purportedly created by the Illinois Department of Transportation (IDOT) and downloaded from the IDOT website.

¶ 5    On June 10, 2016, the railroad filed, pursuant to sections 2-615 and 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615, 2-619 (West 2016)), a motion to dismiss the village's complaint. Therein, the railroad contended, *inter alia*, that (1) all three counts of the complaint "must be dismissed" because the circuit court had no "subject matter jurisdiction over the bridges at issue," (2) "the Illinois Commercial Transportation Law (formerly the Public Utilities Act)" preempted the ordinance, (3) the ICC had already "exercised jurisdiction" over the Tenth Street bridge, (4) the complaint's claims were barred by both the 5-year statute of

3

limitations for an ordinance violation and the 10-year statute of limitations for breach of contract, (5) the complaint's claims were barred by the doctrine of *laches*, (6) count II must be dismissed because it improperly sought both monetary and injunctive relief, and (7) count III must be dismissed because it improperly sought "a judicial deed" when the allegations in the complaint did not establish that the village ever owned the property at issue.

¶ 6    In the memorandum of law filed with its motion to dismiss, the railroad noted, with regard to its statute of limitations and *laches* defenses, that it was attaching to the memorandum exhibits that substantiated its position. Attached to the memorandum as Exhibit 2 was a July 16, 2008, order from the ICC that noted that the railroad closed the Tenth Street bridge on November 13, 1995, after it was set on fire by vandals and experienced deterioration and that the bridge was "actually removed" by the railroad on November 27, 2007. Attached as Exhibit 1 was a February 17, 2006, letter from then-counsel for the village to the railroad that stated that the Tenth and Thirteenth Street bridges were "closed and barricaded due to their state of severe disrepair, having not passed safety inspection," and that the Fifth Street bridge was "on the brink of closure for the same reason." The letter requested that the railroad "fulfill its duty under the contract by replacing, at the railroad's expense, and as provided in the contract," the three bridges. The letter stated that although the village preferred "to resolve this issue amicably," the village was "prepared to proceed with further legal action." Attached to the memorandum as Exhibit 4 was the June 7, 2016, affidavit of attorney Michael J. Barron, who attested to receiving the February 17, 2006, letter from the village's then-counsel, as well as the July 16, 2008, order from the ICC.

¶ 7    A hearing on the railroad's motion to dismiss was held on January 3, 2017, before the Honorable David K. Overstreet. On January 12, 2017, Judge Overstreet entered an order, by docket entry, in which he ruled that the ICC had "exclusive jurisdiction over the issues raised in [the village's] complaint and has in fact previously exercised that jurisdiction over the [Tenth

4

Street] bridge without objection by [the village]." Judge Overstreet ruled that the village "prematurely asks this court to rule on issues prior to seeking relief from the [ICC]." Accordingly, Judge Overstreet granted the motion to dismiss as to all three counts of the village's complaint. This timely appeal followed.

¶ 8                                        ANALYSIS

¶ 9     On appeal, the village contends, *inter alia*, that the trial court erred in its determination that exclusive jurisdiction over the issues raised in the complaint lies with the ICC. Our standard of review with regard to a motion to dismiss, whether the motion is filed pursuant to section 2-615 or section 2-619 of the Code (735 ILCS 5/2-615, 2-619 (West 2016)), is *de novo*. *Phelps v. Land of Lincoln Legal Assistance Foundation, Inc.*, 2016 IL App (5th) 150380, ¶ 11. A motion brought pursuant to section 2-615 of the Code attacks the legal sufficiency of the complaint. *Id.* When we analyze a section 2-615 motion, we determine whether the allegations of the complaint, when viewed in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted. *Id.* Such a motion "admits as true all well-pleaded facts, but not conclusions of law or factual conclusions that are unsupported by allegations of specific facts." *Id.* On the other hand, a motion for involuntary dismissal brought pursuant to section 2-619 of the Code raises an affirmative matter avoiding the legal effect of or defeating the claim. *Id.* ¶ 12. We have held that the affirmative matter must be something more than evidence offered to refute a material fact alleged in the complaint. *Id.* Therefore, "[a] section 2-619 motion is properly used to raise affirmative matters that negate the claim, not to challenge the essential allegations of the plaintiffs' cause of action." *Id.* We note as well that we may affirm the ruling of a trial judge on any basis supported by the record. See, *e.g.*, *Evans v. Lima Lima Flight Team, Inc.*, 373 Ill. App. 3d 407, 418 (2007); see also, *e.g.*, *People v. Johnson*, 208 Ill. 2d 118, 134 (2003). We may do so because the question before us on appeal is the correctness of the result

5

reached by the trial judge, rather than the correctness of the reasoning upon which that result was reached. See, *e.g.*, *Johnson*, 208 Ill. 2d at 128.

¶ 10    As described in detail above, all three counts of the village's complaint are based upon claims that the railroad breached a "contract" that was created between the parties by the passage of the ordinance in 1925. We therefore begin by considering the legitimacy of the ordinance. As the Illinois Supreme Court has recognized, in 1913, the Illinois General Assembly enacted the terms of what was then the Public Utilities Act (the terms are now found in the Illinois Commercial Transportation Law (625 ILCS 5/18c-1101 *et seq.* (West 2016))). See, *e.g.*, *City of Chicago v. Chicago & North Western Ry. Co.*, 4 Ill. 2d 307, 308 (1954). In so doing, the General Assembly "vest[ed] general supervision over all public utilities, including railroads, in the Public Utilities Commission which, by the act of 1921, became the [ICC]." *Id.* In *Chicago & North Western Ry.*, the Illinois Supreme Court noted its 1934 holding in *City of Chicago v. Illinois Commerce Comm'n ex rel. Chicago & Western Indiana R.R. Co.*, 356 Ill. 501 (1934), that when the Public Utilities Act became effective "the power of the city over grade separations ceased to exist, making the city incapable of passing new ordinances or of enforcing existing ordinances with reference to such matters which the act placed within the exclusive jurisdiction of the [ICC]." *Chicago & North Western Ry.*, 4 Ill. 2d at 312. The court noted that it had "also rejected an argument that the act violated the constitutional prohibitions against impairment of the obligations of a contract." *Id.* The court reasoned that "[u]nless there is merit to distinctions urged by the [City of Chicago], the principles of [the 1934 case]" were to prevail, because the act "clearly vest[ed] the [ICC] with plenary and exclusive jurisdiction over the entire subject matter" of any contract involving the viaduct and railroad tracks in question, including safety, maintenance/reconstruction, and the assessment of costs of reconstruction. *Id.* The court found no such merit, stating that after considering the city's arguments, there was "nothing which

6

causes us to depart from the principles" of the 1934 case. *Id.* at 316. Nor are we aware of any other case from the Illinois Supreme Court, or this court, that has departed from the principle that when the Public Utilities Act became effective, the power of a municipality over grade separations ceased to exist, making the municipality incapable of passing new ordinances or of enforcing existing ordinances with reference to such matters that the statute placed within the exclusive jurisdiction of the ICC. To the contrary, in a subsequent case, the Illinois Supreme Court cited *Chicago & North Western Ry.*, as well as the 1934 case and several other cases, for the proposition that "[i]t is well settled that the [ICC]'s jurisdiction over all phases of grade-crossing regulation is plenary and exclusive." *City of Chicago v. Illinois Commerce Comm'n*, 79 Ill. 2d 213, 219 (1980). The court added, "In the exercise of its power to regulate grade crossings in the interest of public safety, the [ICC] is vested with wide discretion to determine what the public interests require and what measures are necessary for the protection and promotion of those interests." *Id.* at 219-20.

¶ 11    In this case, as detailed above, the allegations in the village's complaint, taken as true, indicate that the subject matter of the ordinance passed by the village in 1925 encompassed the construction and maintenance of a rail line through the village, including three bridges and their accompanying "necessary approaches" over the railroad's proposed tracks at Fifth, Tenth, and Thirteenth Streets. Accordingly, the subject matter of the ordinance was then, and is now, subject to the plenary and exclusive jurisdiction of the ICC. Pursuant to the precedent of the Illinois Supreme Court, the village did not in 1925 possess the power to pass the ordinance. It is axiomatic that when a municipality acts beyond its powers in passing an ordinance, the resulting ordinance is void. See, *e.g.*, *Village of River Forest v. Midwest Bank & Trust Co.*, 12 Ill. App. 3d 136, 139-40 (1973). The village contends that if the ordinance is void, this court should declare that the village's "actions in vacating its streets and alleys was [*sic*] also void" and that the

village "is entitled to possession of its streets and alleys today to the same extent that it had prior to entering into" the ordinance. Having concluded that the ordinance is void, and that the village's complaint was therefore properly dismissed by the circuit court, we see no point in making such a declaration.

¶ 12    Of course, this does not mean that the village is without a remedy. The question of what is to be done about a railroad/municipality "contract" regarding the construction and maintenance of a rail line through the municipality—said "contract" having been created by a void ordinance that both parties mistakenly believed was valid—when the parties have performed, at least in part, their obligations under that "contract" for many decades, is squarely within the parameters of the jurisdiction of the ICC. See *City of Chicago*, 79 Ill. 2d at 219-20 (well settled that ICC's jurisdiction over all phases of grade-crossing regulation is plenary and exclusive; in exercise of power to regulate grade crossings in the interest of public safety, ICC "vested with wide discretion to determine what the public interests require and what measures are necessary for the protection and promotion of those interests"). The village has been, and remains, free to seek from the ICC redress for its grievances against the railroad. We do not intend, by this opinion, to foreclose any remedies the ICC may deem proper for either party.

¶ 13                                    CONCLUSION

¶ 14    For the foregoing reasons, we affirm the order of the circuit court of Jefferson County that dismissed the village's complaint.

¶ 15    Affirmed.

8

2018 IL App (5th) 170036

NO. 5-17-0036

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

---

| | | |
|---|---|---|
| THE VILLAGE OF BELLE RIVE, an Illinois Municipal Corporation, | ) ) ) | Appeal from the Circuit Court of Jefferson County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 16-L-25 |
| ILLINOIS CENTRAL RAILROAD COMPANY, an Illinois Corporation, d/b/a CN, | ) ) ) | Honorable David K. Overstreet, |
| Defendant-Appellee. | ) | Judge, presiding. |

---

**Rule 23 Order Filed:**      January 31, 2018
**Motion to Publish Granted:**      March 1, 2018
**Opinion Filed:**      March 12, 2018

---

**Justices:**      Honorable James R. Moore, J.

                Honorable Thomas M. Welch, J., and
                Honorable Richard P. Goldenhersh, J.,
                Concur

---

**Attorney for Appellant**      Gary L. Smith, Loewenstein & Smith, P.C., 1204 South Fourth Street, Springfield, IL 62703

---

**Attorney for Appellee**      Kurt E. Reitz, Thompson Coburn, LLP, 525 West Main Street, Suite 300, Belleville, IL 62222

---