NOTICE
Decision filed 06/21/16. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2016 IL App (5th) 150380

NO. 5-15-0380

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT
_____

| | | |
|---|---|---|
| HARRY PHELPS, ROBERT PHELPS, DENNIS PHELPS, ALAN PHELPS, DONALD PHELPS, n/k/a DAN SHEILS, MICHAEL SHEILS, and MELISSA SHEILS, Heirs of Clifford Phelps, Deceased, | ) ) ) ) ) | Appeal from the Circuit Court of St. Clair County. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 13-L-287 |
| LAND OF LINCOLN LEGAL ASSISTANCE FOUNDATION, INC., an Illinois Not-for-Profit Corporation, and STEPHANIE HIEBERT, Individually, | ) ) ) ) ) ) | |
| | ) | Honorable Randall W. Kelley, |
| Defendants-Appellees. | ) | Judge, presiding. |

_____

JUSTICE MOORE delivered the judgment of the court, with opinion.
Presiding Justice Schwarm concurred in the judgment and opinion.
Justice Cates specially concurred, with opinion.

**OPINION**

¶ 1    The plaintiffs, Harry Phelps, Robert Phelps, Dennis Phelps, Alan Phelps, Donald Phelps, now known as Dan Sheils, Michael Sheils, and Melissa Sheils, heirs of Clifford Phelps, deceased (the decedent), appeal the August 26, 2015, order of the circuit court of St. Clair County, which dismissed their second amended complaint against the

1

defendants, Land of Lincoln Legal Assistance Foundation, Inc., an Illinois not-for-profit corporation, and Stephanie Hiebert, individually. For the following reasons, we affirm.

¶ 2                                          FACTS

¶ 3    On May 28, 2015, the plaintiffs filed a first amended complaint (complaint) in the circuit court of St. Clair County, making the following allegations. The plaintiffs are the decedent's surviving heirs at law. On or about May 25, 2010, the decedent executed a client retainer agreement with the defendants in connection with the preparation and execution of his last will and testament. At that time, the decedent's estate consisted of real and personal property having an approximate aggregate value of $1,600,000. On June 22, 2010, the defendants facilitated the execution of the will, and at that time, the decedent had no prior will. The decedent died on December 20, 2011, at age 82, and but for the execution of the will in question, he would have died intestate.

¶ 4    According to the complaint, the decedent's will was filed in the circuit court of Dunklin County, Missouri, and admitted to probate on December 12, 2012. On December 20, 2012, the plaintiffs filed a petition in the circuit court of Dunklin County, Missouri, to contest the validity of the will and to have the decedent declared to have died intestate. Following extensive discovery, the plaintiffs settled the lawsuit contesting the will, and on December 12, 2014, the circuit court of Dunklin County, Missouri, entered a judgment and order approving settlement.

¶ 5    Count I of the complaint purports to state a cause of action against the defendants for a breach of fiduciary duty, and count II alleges professional negligence against the

2

defendants.[1]  In support thereof, the complaint alleges that the defendants had a duty to ascertain whether the decedent was of sound mind and memory and had the testamentary capacity to bequeath by will the real and personal property that he possessed at the time of his death.  According to the complaint, the defendants breached their duty by failing to communicate with the decedent to determine whether he understood and was capable of understanding the nature, consequences, and effect of the act of executing the will in question, including the fact that the plaintiffs would be disinherited thereby.

¶ 6     In forming the dispositive plan in the decedent's will, the complaint alleges that the defendants never consulted with the decedent himself, but instead relied entirely on information furnished by the primary beneficiaries of the executed will.  In addition, the complaint alleges that the defendants knew that the decedent was physically impaired and could not sign his name, but did not know the nature of his disability or whether he had the requisite mental capacity to execute the will.  Further, the complaint alleges that the defendants failed to follow the required procedures in the execution of the will, and that the decedent, in fact, lacked one or more of the requirements for testamentary capacity,

---

[1]A second amended complaint was filed on July 15, 2015, which merged the causes of action for breach of fiduciary duty and professional negligence into count I. The second amended complaint was identical to the first amended complaint in all other respects.  Because the motion to dismiss at issue in this appeal was filed in response to the first amended complaint, we reference the first amended complaint throughout this opinion.

3

and was incapable of executing a valid will. The complaint alleges that these acts of negligence on the part of the defendants proximately caused the plaintiffs' damage in that they were required to litigate the validity of the will in question, settled the will contest resulting in them losing half of the inheritance to which they were entitled under the law of intestate succession, and incurred substantial attorney fees and expenses in the will contest litigation.

¶ 7 Count III of the complaint alleges a cause of action for tortious interference with inheritance expectancy. See Restatement (Second) of Torts § 774B (1979).[2] This count alleges that the plaintiffs had an expectancy to inherit the decedent's property and that by preparing and procuring the execution of the will in question, the defendants interfered with that expectancy knowing that the effect of the will would be to disinherit the plaintiffs. Finally, count III alleged that this interference on the part of the defendants was tortious in that it was the result of the defendants' professional negligence and/or breach of fiduciary duty.

¶ 8 On June 22, 2015, the defendants filed a motion to dismiss the complaint. After setting forth a statement of "uncontraverted [*sic*] facts/allegations," with citation to the complaint as well as various exhibits attached to the motion to be further detailed below, the motion to dismiss states that it is brought pursuant to sections 2-615, 2-619, and 2-619.1 of the Code of Civil Procedure (the Code) (735 ILCS 5/2-615, 2-619, 2-619.1

---

[2]The second amended complaint alleges a cause of action for tortious interference with inheritance expectancy in count II.

4

(West 2014)).  In the motion to dismiss, the defendants argue that the plaintiffs failed to state a claim for professional negligence because the defendants did not owe a duty to the plaintiffs, who were not the defendants' clients nor intended third-party beneficiaries of the attorney-client relationship.  In addition, the defendants argue that the cause of action for tortious interference with inheritance expectancy should be dismissed because a remedy was available to the plaintiffs in probate.  Finally, the defendants contend that the entire action should be dismissed on the basis of *res judicata*.

¶ 9     After a hearing, the transcript of which is not included in the record on appeal, the circuit court entered an order on August 26, 2015, dismissing the plaintiffs' lawsuit in its entirety "based on each and all of the bases set forth in the [d]efendants' motion to dismiss."  On September 11, 2015, the plaintiffs filed a timely notice of appeal.

¶ 10                                ANALYSIS

¶ 11  We begin our analysis with a statement of our standard of review.  Our review of an order granting a motion to dismiss is *de novo*, whether that motion is brought pursuant to section 2-615 or 2-619 of the Code.  See *Provenzale v. Forister*, 318 Ill. App. 3d 869, 874 (2001).  A motion brought pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2014)) attacks the legal sufficiency of the complaint.  *Provenzale*, 318 Ill. App. 3d at 878 (citing *Abbasi v. Paraskevoulakos*, 187 Ill. 2d 386, 391 (1999)).  In analyzing a section 2-615 motion, the court must determine whether the allegations of the complaint, when viewed in a light most favorable to the plaintiffs, are sufficient to state a cause of action upon which relief can be granted.  *Id.*  A section 2-615 motion admits as true all

well-pleaded facts, but not conclusions of law or factual conclusions that are unsupported by allegations of specific facts. *Id.*

¶ 12    In contrast to a section 2-615 motion, a motion for involuntary dismissal brought pursuant to section 2-619 of the Code (735 ILCS 5/2-619(a)(9) (West 2014)) raises an "affirmative matter avoiding the legal effect of or defeating the claim." The affirmative matter must be something more than evidence offered to refute a material fact alleged in the complaint. *Provenzale*, 318 Ill. App. 3d at 878. A section 2-619 motion is properly used to raise affirmative matters that negate the claim, not to challenge the essential allegations of the plaintiffs' cause of action. *Id.* (citing *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 115 (1993)).

¶ 13    Here, the defendants presented a hybrid motion to dismiss, citing both section 2-615 and 2-619 of the Code (735 ILCS 5/2-615, 2-619 (West 2014)). Section 2-619.1 of the Code permits hybrid motions, but requires that such motions be presented in parts. 735 ILCS 5/2-619.1 (West 2014). Furthermore, the Code requires that each part be limited to and specify that section under which it is being brought, and that each part clearly show the points or grounds relied upon under the section upon which it is based. *Id.* The hybrid motion to dismiss presented by the defendants in this case does not conform to these requirements, and we caution the defendants to conform to the standards set forth by the Code in presenting hybrid motions in the future. However, we recognize that to remand this case for correction of these procedural errors could occasion delay and waste judicial resources, and that the plaintiffs have not claimed they were prejudiced

6

thereby. Accordingly, we will address the propriety of the motion on its merits. See *In re Estate of Berry*, 277 Ill. App. 3d 1088, 1090-91 (1996).

¶ 14 With regard to the plaintiffs' cause of action against the defendants for professional negligence, the defendants' motion to dismiss asserts that the defendants did not owe a duty to the plaintiffs, who were not parties to the attorney-client relationship between the defendants and the decedent. Because this argument is asserting the legal insufficiency of the complaint, it is properly brought pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2014)). To state a legally sufficient claim for negligence, a plaintiff must allege the existence of a duty, a breach of that duty, and an injury proximately caused by that breach. *McLane v. Russell*, 131 Ill. 2d 509, 514 (1989) (citing *Curtis v. County of Cook*, 98 Ill. 2d 158, 162 (1983)). The determination of whether a duty exists is an issue of law to be determined by the court. *Id.* (citing *Kirk v. Michael Reese Hospital & Medical Center*, 117 Ill. 2d 507, 525 (1987)). To conclude that a duty exists, a court must find that the defendant and the plaintiff stood in such a relationship to one another that the law imposed upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff. *Id.* at 514-15.

¶ 15 The general rule is that an attorney owes a professional obligation only to his client, not to nonclient third persons. *Id.* at 515 (citing *National Savings Bank v. Ward*, 100 U.S. 195 (1880), and *Byron Chamber of Commerce, Inc. v. Long*, 92 Ill. App. 3d 864, 868 (1981)). Our Illinois Supreme Court, in *Pelham v. Griesheimer*, 92 Ill. 2d 13 (1982), held for the first time that a nonclient may maintain a negligence action against an attorney under limited circumstances. Because this is the case in which the relevant

7

test was first stated, we examine *Pelham* in detail to determine whether the plaintiffs, as nonclients of the defendants, are able to maintain such a cause of action under the circumstances alleged in the complaint.

¶ 16    In *Pelham*, the defendant attorney was retained to represent a woman in a divorce action against her husband. *Id.* at 16. The divorce decree contained a provision requiring the husband to maintain his children as the prime beneficiaries in his life insurance policies. *Id.* After the divorce decree was entered, the husband remarried and named his second wife the beneficiary of the insurance policy, and his second wife received the proceeds of the policy after the husband's death. *Id.* The children sued the attorney for legal malpractice alleging that the attorney owed them a duty to see that they became the beneficiaries. *Id.* The children alleged the attorney breached that duty by failing to notify the husband's employer, or the insurance company, of the divorce decree provision and failing to advise the first wife to notify the husband's employer or insurance company of the provision. *Id.* at 16-17. The circuit court dismissed the complaint on the basis that there was no attorney-client relationship between the plaintiffs and the defendant and that therefore no cause of action for legal malpractice was stated. *Id.* at 16. The appellate court affirmed. *Id.*

¶ 17    The Illinois Supreme Court, on review, began with a discussion of the trend in tort law to abolish privity of contract as a prerequisite to establishing a duty. *Id.* at 20. The court noted that while privity of contract has been abolished in many areas of tort law, the concern remains that liability for negligence should not extend to an unlimited and unknown number of potential plaintiffs. *Id.* The court emphasized that in the area of

8

legal malpractice, the attorney's obligations to his or her client must remain paramount. *Id.* The court concluded that, in such cases, the best approach is that the plaintiffs must allege and prove facts demonstrating that they are in the nature of third-party beneficiaries of the relationship between the client and the attorney in order to recover in tort. *Id.* The court stressed that, by this, they meant that to establish a duty owed by the defendant attorney to the nonclient, the nonclient must allege and prove that the intent of the client to benefit the nonclient third party was the primary or direct purpose of the transaction or relationship. *Id.* at 20-21.

¶ 18 Applying what it termed as the "intent to directly benefit" test to the facts alleged in the complaint in *Pelham*, the court concluded that the plaintiffs therein were clearly not in the nature of direct third-party beneficiaries. *Id.* at 23. The court found that the defendant attorney in *Pelham* was hired primarily for the purpose of obtaining a divorce, property settlement, and custody of the minor children for the client, not to represent her children's best interests. *Id.* The court concluded that the plaintiffs were, at best, only incidental beneficiaries. *Id.* The court found a variety of potential conflict of interest situations in cases where the client's interests would conflict with the interests of the plaintiffs, and refused to create such a wide range of potential conflicts by imposing duties upon an attorney in favor of a nonclient, unless the intent to benefit the nonclient is clearly evident. *Id.* at 23-24.

¶ 19 We explain the analysis and conclusion of the court in *Pelham* in great detail above, because the plaintiffs in the case at bar quote *Pelham* in two places where the court articulated the test to include the words "or influence." According to the plaintiffs,

these words should be interpreted to expand what the court named "the intent to directly benefit test" to allow the plaintiffs to proceed against the defendants in this case because they were disinherited as a result of the attorney-client relationship. The plaintiffs concede that the purpose of the attorney-client relationship between the defendants and the decedent was to draft a will and the impact of that will did not directly benefit them, but argue they were influenced, albeit in a negative way. The plaintiffs argue that the use of the term "or influence" twice in the *Pelham* opinion should be interpreted to allow their action against the defendants to proceed. We decline to expand the scope of the *Pelham* test as urged by the plaintiffs.

¶ 20  The first time the *Pelham* court used the term "or influence," it began by stating that "[a]nalogizing the scope of the duty to the concept of a third-party direct beneficiary serves the purpose of limiting the scope of the duty owed by an attorney to nonclients." *Id.* at 21. The court then went on to say that "[t]he key consideration is the attorney's acting at the direction of or on behalf of the client to benefit *or influence* a third party." (Emphasis added.) *Id.* In making this statement the court cited to the conclusion section of a law review article. *Id.* (citing Walter Probert & Robert A. Hendricks, *Lawyer Malpractice: Duty Relationships Beyond Contract*, 55 Notre Dame L. Rev. 708, 728 (1980)). Moreover, the court followed the statement with the following quote from the Maryland Court of Appeals:

> " 'Whether the action is based upon a contract (express or implied), to which the traditional rules relating to third party beneficiaries may apply, or more on a theory of negligence–the violation of a duty not founded exclusively upon

10

contract–there still must be shown (*i.e.*, alleged and shown) that the plaintiff, if not the direct employer/client of the defendant attorney, is a person or part of a class of persons specifically intended to be the beneficiary of the attorney's undertaking.' " *Id.* (quoting *Clagett v. Dacy*, 420 A.2d 1285, 1289 (Md. Ct. Spec. App. 1980)).

¶ 21 The court then stated, without citation, "We conclude that, for a nonclient to succeed in a negligence action against an attorney, he must prove that the primary purpose and intent of the attorney-client relationship itself was to benefit *or influence* the third party." (Emphasis added.) *Id.* The court finished this part of its discussion by stating, "Under such proof, recovery may be allowed, provided that the other elements of a negligence cause of action can be proved." *Id.* In making this statement, the court cited to another law review article. *Id.* (citing Joseph T. Kleespies, Comment, *Liability of Lawyers to Third Parties for Professional Negligence in Oregon*, 60 Or. L. Rev. 375 (1981)).

¶ 22 This court has reviewed both law review articles to which the court refers when inserting the words "or influence" into its statement of what it terms as "the intent to directly benefit test." Neither article contains any discussion of the term "or influence" when discussing the test, and neither applies the term in the negative manner advanced by the plaintiffs. The Notre Dame article simply adds the words in its conclusion section with no discussion or citation. The Oregon article does not use the words at all. In addition, this court finds no case cited by the *Pelham* court and no subsequent case or authority that suggests that the term "or influence" is intended to in any way impact the

11

court's statement of the test, in the numerous other places in the opinion described above, that the plaintiffs must be direct beneficiaries of the attorney-client relationship in order to have a cause of action for legal malpractice. While it is unclear to this court why the term "or influence" was added to the court's statement of the test in *Pelham*, the absolute statements regarding the exclusivity of the "intent to directly benefit test" as set forth throughout the remainder of the *Pelham* opinion, as well as the subsequent cases discussed below, convince this court that it is not intended to serve as a second prong to be applied independently of the "intent to directly benefit test."

¶ 23    In *McLane v. Russell*, 131 Ill. 2d 509 (1989), the plaintiffs, who were named beneficiaries under a will, instituted an action for legal malpractice against the attorney who drafted the will. The plaintiffs alleged that the attorney was negligent in failing to sever a joint tenancy between the will's testator and her sister, rendering a provision in the testator's will unenforceable, thereby defeating the testator's testamentary intent to devise a farm to the plaintiffs. *Id.* at 513. After a jury awarded the plaintiffs damages, the defendants appealed, claiming the plaintiffs were not intended beneficiaries of the attorney-client relationship and thus had no right to bring a legal malpractice action against the defendants. *Id.* at 514.

¶ 24    The supreme court in *McLane* turned back to the *Pelham* decision in framing its analysis of the issue of whether the plaintiffs could proceed against the defendants for legal malpractice. *Id.* at 515. We quote the *McLane* court's discussion of *Pelham* here because it illustrates our finding that the term "or influence" has no meaning outside of the "intent to directly benefit" test:

12

"In *Pelham v. Griesheimer* (1982), 92 Ill. 2d 13, this court held that, under limited circumstances, a nonclient may maintain a negligence action against an attorney. Under *Pelham*, a nonclient may maintain a negligence action against an attorney *only* when the *nonclient can show that he was the primary intended beneficiary of the attorney-client relationship*. *Pelham* held that a nonclient-plaintiff seeking to recover in tort for legal malpractice must establish that the defendant-attorney owed him a duty of due care by showing that the primary purpose of the relationship between the defendant-attorney and the client was to benefit *or influence* the nonclient-plaintiff." (Emphases added.) *Id.*

¶ 25 The *McLane* court made other references to the *Pelham* decision throughout its analysis that further support our determination that the term "or influence" should not be interpreted to allow the plaintiffs in this case, who were negatively impacted by the attorney-client relationship between the decedent and the defendants, to proceed against the defendants for legal malpractice. For example, the *McLane* court made the following direct quote from *Pelham*, which we paraphrased above, in defining the circumstances in which an attorney may be held liable to a nonclient:

" 'In the area of legal malpractice the attorney's obligations to his client must remain paramount. In such cases the best approach is that the plaintiffs must allege and prove facts demonstrating that they are in the nature of third-party intended beneficiaries of the relationship between the client and the attorney in order to recover in tort. [Citations.] By this we mean that to establish a duty owed by the defendant attorney to the nonclient the nonclient must allege and prove that

the intent of the client to benefit the nonclient third party was the primary and direct purpose of the transaction or relationship. [Citation.]' " (Emphasis omitted.) *Id.* at 516-17 (quoting *Pelham*, 92 Ill. 2d at 20-21).

¶ 26 Because the plaintiffs in *McLane* convincingly proved that the testator intended to devise her interest in the farm to the plaintiffs and that this was the primary purpose of the testator's engagement of the defendant attorney, the court applied the "intent to directly benefit" test to affirm the judgment against the defendant for legal malpractice. *Id.* at 519-20. We find the *McLane* decision supports our finding that the term "or influence," as used by the supreme court, is not intended to provide for a cause of action against an attorney where there is no allegation that the client engaged the attorney with the intent to directly benefit the plaintiff.

¶ 27 We now turn to the supreme court's most recent decision on the subject of an attorney's liability to a nonclient. In *In re Estate of Powell*, 2014 IL 115997, a decedent's wife entered into an attorney-client agreement with the defendant attorneys to bring a cause of action against the doctors who treated the decedent pursuant to the Wrongful Death Act (740 ILCS 180/2 (West 2012)). The decedent was survived by his wife and two children, one of which was a disabled adult. *In re Estate of Powell*, 2014 IL 115997, ¶ 3. After the wrongful death action was settled, the public guardian for the disabled adult brought a legal malpractice action against the attorneys alleging that the attorneys were negligent in the way they distributed and accounted for the settlement proceeds. *Id.* ¶ 7. The defendants filed motions to dismiss based on their lack of duty to the plaintiff. *Id.* ¶ 8. The circuit court granted the motions, but the appellate court reversed, finding

14

that the complaint sufficiently alleged the defendants owed the plaintiff a duty as an intended beneficiary. *Id.* ¶¶ 8-9.

¶ 28    The supreme court framed the issue on appeal in *Powell* as whether an attorney who brings a wrongful death action owes a duty to the decedent's beneficiaries. *Id.* ¶ 11. To resolve this issue, the supreme court again turned to *Pelham*, explaining the test enunciated in *Pelham* as follows:

"Our starting point is the traditional, general rule that an attorney is liable only to his client, not to third persons. [Citation.] However, if a nonclient is an intended third-party beneficiary of the relationship between the client and the attorney, the attorney's duty to the client may extend to the nonclient as well. [Citation.] The key consideration is whether the attorney is acting at the direction of or on behalf of the client to benefit or influence a third party. [Citation.] We concluded in *Pelham* that 'for a nonclient to succeed in a negligence action against an attorney, he must prove that the primary purpose and intent of the attorney-client relationship itself was to benefit or influence the third party.' [Citation.] This is referred to as the 'intent to directly benefit' test. [Citation.]"[3] *Id.* ¶ 14 (citing *Pelham*, 92 Ill. 2d at 19-23).

¶ 29    Applying these principles, the court determined that the Wrongful Death Act itself creates a cause of action for pecuniary losses suffered by the decedent's spouse and next of kin by reason of the death of the injured person, and explicitly provides that the

---

[3]All citations omitted from this quote are from the *Pelham* decision.

amount recovered in such action shall be for the " 'exclusive benefit of the surviving spouse and next of kin.' " *Id.* ¶ 16 (quoting 740 ILCS 180/2 (West 2012)). For these reasons, the court held that "an attorney who brings a wrongful death action owes a legal duty to the decedent's beneficiaries at the distribution of funds phase of the action." *Id.* ¶ 20.

¶ 30    Again, we find that the supreme court's review of the *Pelham* decision in *Powell* undercuts any notion that the use of the term "or influence" is intended to be a substantive addition to the "intent to directly benefit test" or a "second prong," as the plaintiffs argue. We conclude that to interpret the court's use of the term "or influence" in the manner suggested by the plaintiffs would create a vast array of potential conflict of interest situations in which the interests of the client would diverge from that of the plaintiffs. This is the exact concern the supreme court expressed in *Pelham* regarding creating a situation where the existence of a duty of the attorney to another person could interfere with the undivided loyalty which the attorney owes his client. 92 Ill. 2d at 22-23. The *Pelham* court, despite adding the word "or influence" to its statement of the test in two places in its opinion, expressly "refuse[d] to create such a wide range of potential conflicts by imposing such duties upon an attorney in favor of a nonclient, unless the intent to benefit the third party is clearly evident." *Id.* at 23-24.

¶ 31    Applying a third-party beneficiary analysis to the facts as alleged in the complaint in the case at bar, we agree with the defendants, that they were hired by the decedent to draft and execute a will, and the defendants' representation of the decedent, at most, can be said to have had an incidental, detrimental impact on the plaintiffs, who were

16

disinherited thereby. Accordingly, we find that the plaintiffs are unable to state a cause of action against the defendants for legal malpractice, due to a lack of duty on the part of the defendants.

¶ 32 We now address the plaintiffs' cause of action against the defendants for tortious interference with inheritance expectancy. The defendants argue that this claim is properly dismissed because the plaintiffs had a remedy available to them in the probate proceeding and chose not to avail themselves of that remedy. Because this argument is in the nature of affirmative matter that the defendants assert defeats the plaintiffs' claim for relief, it is properly addressed as a motion to dismiss pursuant to section 2-619 of the Code (735 ILCS 5/2-619 (West 2014)). Our review of the applicable law reveals that the defendants' assertion is correct.

¶ 33 The facts of this case are nearly identical to those set forth in *Robinson v. First State Bank of Monticello*, 97 Ill. 2d 174 (1983). In *Robinson*, a decedent's heirs brought an action for tortious interference with inheritance expectancy against an attorney who they alleged induced the decedent to execute a will and codicil that had the effect of disinheriting the plaintiffs. *Id.* at 183-84. Prior to bringing the action for tortious interference with inheritance expectancy, the will had been admitted to probate and the plaintiffs had engaged an attorney to determine whether they should file a will contest. *Id.* at 184. The plaintiffs did not file the will contest, instead settling their dispute regarding the validity of the will and allowing the statutorily prescribed period in which to contest the will to expire. *Id.* The Illinois Supreme Court held that under these

17

circumstances, it would not recognize a tort for intentional interference with inheritance expectancy. *Id.*

¶ 34 Here, the plaintiffs actually filed an action contesting the will, but chose to settle that action short of reaching the merits of their contentions regarding the will's invalidity. As a result, the will was admitted to probate, thereby establishing the validity of the will. See *In re Estate of Luccio*, 2012 IL App (1st) 121153, ¶ 24 (citing *Robinson*, 97 Ill. 2d at 184). We find that the declaration of the supreme court in *Robinson* controls our disposition of this issue on appeal.

¶ 35 We find the remaining cases cited by the plaintiffs in support of their cause of action for tortious interference with inheritance expectancy to be distinguishable. In *In re Estate of Ellis*, 236 Ill. 2d 45, 48 (2009), the plaintiff was a charitable organization that was named as a beneficiary of the decedent's will executed in 1964. In 1999, the decedent executed a new will that left her entire estate to her pastor. *Id.* After the decedent died, her 1999 will was admitted to probate. *Id.* The plaintiff did not learn of its interest in the decedent's 1964 will until nearly three years after her death. *Id.* The plaintiff then filed a claim for intentional interference with inheritance expectancy against the decedent's pastor, alleging that but for the pastor's intentional scheme to exercise undue influence over the decedent and abuse his position of trust, the plaintiff would be the sole beneficiary of the decedent's estate. *Id.* at 49. In addition, the plaintiff in *Ellis* alleged that the pastor induced the decedent to buy him gifts during her lifetime, and sought recovery of these *inter vivos* gifts as well. *Id.*

18

¶ 36    "Unlike the plaintiffs in *Robinson*, the plaintiff in *Ellis* was allowed to proceed with its tort claim because a will contest proceeding under the [Probate] Act was not 'available' to it and, therefore, it could not be said that the plaintiff voluntarily relinquished an opportunity to follow that required procedural course." *In re Estate of Luccio*, 2012 IL App (1st) 121153, ¶ 29.  Because the plaintiff in *Ellis* was unaware of its cause of action until well after the will was admitted to probate, it never had the opportunity to proceed under the Probate Act. *Id.*  In addition, the *Ellis* court found that a will contest would not have provided the plaintiff with complete relief, since the plaintiff sought recovery for *inter vivos* transfers of property. *Id.* ¶ 30.  As explained in *In re Estate of Luccio*, if a proceeding under the Probate Act is "available" to a litigant, such that he is "aware" of his legacy and has an opportunity to proceed under the Probate Act and obtain complete relief, but chooses not to, instead agreeing to take no action in probate in exchange for a settlement, then he cannot later bring a separate action for intentional interference with inheritance expectancy. *Id.* ¶ 31.  This is precisely the situation we have in the case at bar.

¶ 37    Similarly, *DeHart v. DeHart*, 2013 IL 114137, is distinguishable.  In *DeHart*, the plaintiffs were pursuing their tort claim for intentional interference with inheritance expectancy concurrently with their action contesting the will under the Probate Act. *Id.* ¶ 1.  Accordingly, the *DeHart* plaintiffs did not intentionally forego a probate remedy.  The *DeHart* court allowed the plaintiffs' claim for intentional interference with inheritance expectancy to proceed but made clear that if the plaintiffs' claims in probate succeeded, dismissal of the tort count would be appropriate because the adequacy of the

19

probate relief would be undisputed. *Id.* ¶ 41. *DeHart* was not a case where the plaintiffs chose not to avail themselves of a complete remedy in probate, as is the situation in the case at bar.

¶ 38 Finally, *Bjork v. O'Meara*, 2013 IL 114044, is clearly distinguishable. In *Bjork*, the plaintiff's claim for tortious interference with inheritance expectancy was not based on the alleged invalidity of the decedent's will. *Id.* ¶ 32. Rather, the plaintiff alleged that the decedent had planned to name her as the pay-on-death beneficiary of a bank account, and had taken affirmative steps toward fulfilling his intention. *Id.* ¶ 17. The plaintiff alleged that the defendant interfered with the decedent's plan by fraud, undue influence, misrepresentation, and other tortious means. *Id.* The plaintiff alleged the defendant benefitted from his tortious conduct where the proceeds of the account were distributed to him pursuant to the decedent's will; and, if not for the defendant's wrongdoing, the plaintiff would have been named the beneficiary on the account and would have received the account proceeds upon the decedent's death. *Id.*

¶ 39 Additionally, the *Bjork* plaintiff did proceed under the Probate Act to the extent she was able, in that she filed petitions to discover assets, asserting entitlement to the assets in the account. *Id.* ¶ 11. She attempted to compel the deposition of the decedent's attorney within that proceeding, in order to prove that the decedent intended to name her a beneficiary on the account, which the supreme court found that the circuit court erred in refusing. *Id.* ¶ 31. The supreme court found that these facts distinguished *Bjork* from *Robinson*, in that the probate proceeding did not provide meaningful relief to the plaintiff and the plaintiff's claim did not in any way assert the invalidity the decedent's will. *Id.*

20

¶ 33. *Bjork* is inapposite to the facts of the instant case, and *Robinson* controls. Because the plaintiffs in the case at bar did not avail themselves of the relief provided under the Probate Act, instead choosing to settle their claim to invalidate the will, the circuit court was correct in dismissing the plaintiffs' claims for tortious interference with inheritance expectancy.

¶ 40                                    CONCLUSION

¶ 41    For the foregoing reasons, the order of the circuit court of St. Clair County, dismissing the plaintiffs' second amended complaint, is affirmed.

¶ 42    Affirmed.

¶ 43    JUSTICE CATES, specially concurring.

¶ 44    I concur in the result reached by my colleagues. I do not believe our Illinois Supreme Court intended to expand the definition of the "intent to directly benefit" test as broadly as advocated by the plaintiffs. Therefore, there was no duty owed by the defendants to the plaintiffs herein, and the court properly dismissed the plaintiffs' negligence/breach of fiduciary duty claim under section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2014)). With regard to the plaintiffs' claim of "tortious interference with inheritance expectancy," I also agree that this claim was properly dismissed pursuant to section 2-619 of the Code (735 ILCS 5/2-619 (West 2014)).

¶ 45    I write separately to highlight the defendants' failure to follow the requirements of section 2-619.1 of the Code.  This court is not the forum to decide which sections of the Code were applicable to the defendants' case.  As noted by my colleagues, the defendants presented the trial court with a "hybrid" motion to dismiss, citing both sections 2-615 and 2-619 of the Code.  Section 2-619.1 of the Code allows litigants to file combined motions.  735 ILCS 5/2-619.1 (West 2014).  However, the statute clearly states that a combined motion "shall be in parts."  The statute further explains: "Each part shall be limited to and shall specify that it is made under one of Sections 2-615, 2-619, or 2-1005.  Each part shall also clearly show the points or grounds relied upon under the Section upon which it is based."  735 ILCS 5/2-619.1 (West 2014).

¶ 46    The defendants submitted a 44-page motion to dismiss in 10-point font, with exhibits attached.  In this motion, the defendants set forth various statutes, which included the exact language in section 2-619.1, as above.  Despite their citation to the law on combined motions, the defendants, themselves, failed to abide by that statute.  They did not divide their arguments, and made no effort to assist the court in determining why the plaintiffs' claims should be dismissed pursuant to section 2-615 versus section 2-619.  Instead, the defendants filed a tome that argued numerous reasons for dismissal of the complaint, including the lack of duty, *res judicata*, collateral estoppel, and failure to file their claim in the probate court.

¶ 47    My colleagues simply warn the defendants not to make the same mistake in the future.  My concern, however, is greater.  The failure to divide section 2-615 and 2-619 arguments into separate parts, as required under section 2-619.1, is prevalent in the trial

22

bar. This failure to comply with the requirements of section 2-619.1 places the opposing parties and the court at a disadvantage. The reason for requiring the motion to contain sections is for the purpose of allowing the opposing parties, and the court, the opportunity to understand the basis for the requested dismissal. Failure to follow the rules, and allowing the defendants to file a "shotgun" motion, is unfair to the litigants and the court. As a result of the defendants' failure to follow the law, this court did not have a clear understanding of what factors the trial court used to dismiss the plaintiffs' case. Therefore, we were left with the option of either remanding the case for a further hearing or proceeding with our own interpretation of the motion in order to determine whether to affirm the trial court's dismissal of the complaint. In the interest of justice, we chose not to remand, as this would have prolonged the litigation, at further expense to the parties. Notions of fundamental fairness are better served by following the law and our applicable rules. We should not have to "caution" the bar regarding their use. Nevertheless, I concur with my colleagues, and affirm the order of the circuit court of St. Clair County, dismissing the plaintiffs' second amended complaint.

2016 IL App (5th) 150380

NO. 5-15-0380

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT
_____

| | | |
|---|---|---|
| HARRY PHELPS, ROBERT PHELPS, DENNIS PHELPS, ALAN PHELPS, DONALD PHELPS, n/k/a DAN SHEILS, MICHAEL SHEILS, and MELISSA SHEILS, Heirs of Clifford Phelps, Deceased, | ) ) ) ) ) | Appeal from the Circuit Court of St. Clair County. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 13-L-287 |
| LAND OF LINCOLN LEGAL ASSISTANCE FOUNDATION, INC., an Illinois Not-for-Profit Corporation, and STEPHANIE HIEBERT, Individually, | ) ) ) ) ) ) | Honorable Randall W. Kelley, |
| Defendants-Appellees. | ) | Judge, presiding. |

_____

**Opinion Filed:**       June 21, 2016
_____

**Justices:**       Honorable James R. Moore, J.

                    Honorable S. Gene Schwarm, P.J.,
                    Concurring
                    Honorable Judy L. Cates, J.,
                    Specially concurring

_____

**Attorneys**      Edward J. Kionka, Lesar Law Building, 1150 Douglas Drive, Carbondale, IL
**for**            62901; Larry O. Brockman, Larry O. Brockman, Ltd., 5 Executive Woods
**Appellants**    Court, Belleville, IL 62226

_____

**Attorneys**      Michael J. Nester, Sean K. Cronin, Donovan Rose Nester, P.C., 201 South
**for**            Illinois Street, Belleville, IL 62220
**Appellees**

_____