NOTICE

Decision filed 07/16/20. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2020 IL App (5th) 190304-U

NO. 5-19-0304

IN THE

NOTICE

This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THOMAS G. PETROFF, Trustee of the Thomas G. Petroff and Jane Petroff Trust, | ) ) ) | Appeal from the Circuit Court of St. Clair County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 16-L-438 |
| CROWN CASTLE USA INC., SPRINT SPECTRUM, L.P., STC FIVE, LLC, and GLOBAL SIGNAL ACQUISITIONS II, LLC, | ) ) ) ) ) | |
| | ) | Honorable Heinz M. Rudolf, |
| Defendants-Appellees. | ) | Judge, presiding. |

_____

JUSTICE CATES delivered the judgment of the court.
Presiding Justice Welch and Justice Moore concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The trial court's order dismissing Petroff's second amended complaint with prejudice is affirmed where the lease agreement at issue was unambiguous and clearly stated the parties' agreement that the defendants were only obligated to reimburse Petroff for real estate taxes directly attributable to the defendants' improvements on the leased premises of Petroff's property.

¶ 2   Plaintiff Thomas G. Petroff, the trustee of the Thomas G. Petroff and Jane Petroff Trust, (Petroff) appeals the trial court's order dismissing Petroff's second amended complaint, with prejudice. On appeal, Petroff argues that the trial court incorrectly

1

interpreted the parties' lease agreement regarding the obligation of the defendants to reimburse Petroff for increases in real estate taxes. For the following reasons, we affirm the trial court's order.

¶ 3                              BACKGROUND

¶ 4     Petroff owned a parcel of land in Caseyville, Illinois. In May of 1996, Petroff and defendant Sprint Spectrum, L.P. (SSLP) entered into a lease agreement whereby SSLP leased a portion of Petroff's property to erect and maintain a cell tower. SSLP subsequently assigned the lease to its subsidiary, defendant STC Five, LLC (STC Five). STC Five later granted a sublease interest to defendant Global Signal Acquisitions II, LLC (GSA), which handles the payment of any real estate tax reimbursements and/or rents on behalf of STC Five.

¶ 5     On August 17, 2016, Petroff filed a complaint in the circuit court of St. Clair County for breach of contract and sought reimbursement for increases in real estate taxes and maintenance costs. In his complaint, Petroff only named Crown Castle USA Inc. (Crown Castle) as a defendant. Crown Castle filed an answer and asserted affirmative defenses. Amongst other things, Crown Castle claimed that it was not a proper party to the lawsuit because Crown Castle was not a party to the lease, and that the tenant to the lease agreement was only obligated to pay for real estate taxes directly attributable to improvements made by the tenant on the leased premises. Petroff subsequently amended his complaint to add SSLP, STC Five, and GSA as defendants. Petroff did not, however, dismiss Crown Castle as a defendant. In his second amended complaint, which is the subject of this appeal, Petroff claimed that paragraph 4 of the lease obligated SSLP, STC Five, GSA, and Crown Castle

2

(collectively "the defendants") to pay for all increases in the real estate taxes for Petroff's property, regardless of the reason for the increase.[1] Paragraph 4 of the lease states as follows:

> "4.     **Rent.** Rent will be paid to Owner at its addresses for notices herein annually in advance beginning on the Commencement Date and on the date of commencement of each succeeding Lease Year during the Term in the amounts set forth on the Rent Schedule attached hereto as <u>Exhibit C</u> and incorporated herein by this reference. It is the intention of the parties hereto that this Lease is a 'gross lease' and that the Rent herein provided includes expenses incurred by Owner for the reasonable cost of ordinary maintenance, insurance, taxes or other expenses or charges required to be paid with respect to the Land and that SSLP shall have no payment obligations hereunder except for Rent and electric consumption charges hereinafter described. Notwithstanding the foregoing, SSLP shall reimburse to Owner within thirty (30) days after the due date thereof any increase in real estate taxes and insurance premiums." (Emphasis in original.)

¶ 6     The defendants moved to dismiss Petroff's second amended complaint pursuant to 735 ILCS 5/2-619(a)(9). In their motion, the defendants asserted that they were only liable for increases in real estate taxes directly attributable to improvements made by the

---

[1]The parties agreed that Petroff had been paid for the increases in real estate taxes directly attributable to the defendants' improvements on the leased premises. Petroff was, however, seeking additional monetary amounts over and above those due to placement of the cell tower.

defendants on the leased premises. In making this argument, the defendants relied on paragraph 8(b) of the lease, which was not referenced in Petroff's second amended complaint. Paragraph 8(b) states as follows:

> "8. **Improvements.** *** (b) Owner shall pay as and when due all taxes, assessments, liens, encumbrances, levies and other charges against the Land, and in the event Owner shall fail to do so, SSLP may, but shall not be obligated to, pay same and either offset or deduct from the rent payable the full amount thereof, together with SSLP's reasonable costs incurred in connection therewith, or demand reimbursement from Owner of same, which reimbursement shall be due and payable on demand. Notwithstanding the foregoing, SSLP shall reimburse to Owner within thirty (30) days after the due date thereof any increase in real estate taxes on the Premises directly attributable to improvements made by SSLP on the Premises. SSLP shall pay any personal property taxes assessed against the PCS equipment." (Emphasis in original.)

¶ 7 Petroff filed a response to the defendants' motion and cross-moved for summary judgment. The trial court reviewed the lease and found that the language contained therein was unambiguous and constituted a gross lease. The trial court concluded that the defendants were only obligated to reimburse Petroff for real estate taxes directly attributable to the defendants' improvements on the leased premises. The trial court granted the defendants' motion and dismissed Petroff's second amended complaint, with prejudice. This appeal follows.

4

¶ 8                                    ANALYSIS

¶ 9     In the present case, the parties agree that the lease constitutes a valid contract. Petroff believes that the defendants are responsible for all increases in the real estate taxes assessed against his entire property, regardless of the reason for the increase in those taxes. Petroff relies on the following language in paragraph 4 of the lease: "Notwithstanding the foregoing, [the defendants] shall reimburse to [Petroff] within thirty (30) days after the due date thereof any increase in real estate taxes and insurance premiums." Conversely, the defendants submit that the lease only obligates the defendants to reimburse Petroff for those increases in real estate taxes assessed against the land leased by the defendants that were directly attributable to improvements made by the defendants. The defendants rely on the following language in paragraph 8(b) of the lease: "Notwithstanding the foregoing, [the defendants] shall reimburse to [Petroff] within thirty (30) days after the due date thereof any increase in real estate taxes on the Premises directly attributable to improvements made by [the defendants] on the Premises." For the following reasons, we affirm.

¶ 10    A motion to dismiss made pursuant to 735 ILCS 5/2-619(a)(9) permits the dismissal of a claim where the claim is "barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2018). We review the trial court's granting of a motion to dismiss pursuant to section 2-619 *de novo*. *Phelps v. Land of Lincoln Legal Assistance Foundation, Inc.*, 2016 IL App (5th) 150380, ¶ 11. Additionally, the trial court's interpretation of a lease involves a question of law which this court also reviews *de novo*. *Urban Sites of Chicago, LLC v. Crown Castle USA*, 2012 IL App (1st) 111880, ¶ 23.

5

¶ 11    The principal objective in interpreting a contract is to give effect to the intention of the parties. *Thompson v. Gordon*, 241 Ill. 2d 428, 441 (2011). When the language of a contract is clear, a court must determine the parties' intent solely from the language of the contract which must be given its plain and ordinary meaning. *Premier Title Co. v. Donahue*, 328 Ill. App. 3d 161, 164 (2002). When interpreting a contract, a court must construe the contract as a whole, viewing each provision in light of other provisions, rather than focusing on the contract's provisions in isolation. *Gordon*, 241 Ill. 2d at 441.

¶ 12    Petroff argues that paragraphs 4 and 8(b) of the lease can be read harmoniously so that paragraph 8(b) is "subsumed" into paragraph 4. In making this argument, Petroff submits that the general language, "any increase in real estate taxes," used in paragraph 4, encompasses the specific language contained in paragraph 8(b). Petroff's argument, however, contravenes well-settled contract principles.

¶ 13    First, a court may not interpret a contract in a way that would nullify provisions or render them meaningless. *Board of Managers of Hidden Lake Townhome Owners Ass'n v. Green Trails Improvement Ass'n*, 404 Ill. App. 3d 184, 190 (2010). We begin with an analysis of paragraph 4 of the lease. This section is entitled "Rent," and is a general contract provision which indicates which party shall be responsible for rent. In fact, paragraph 4 indicates that it is Petroff, the owner, who is generally responsible for "the reasonable cost of ordinary maintenance, insurance, taxes or other expenses or charges required to be paid with respect to the Land ***." This general language is only modified by the terms contained therein, which obligated SSLP to pay the rent as described elsewhere in the lease agreement. The final sentence of paragraph 4 then concludes by stating that SSLP "shall

6

reimburse to Owner *** any increase in real estate taxes and insurance premiums." Thus, the lease contains a very general provision regarding the rights of the parties and the obligations of the landowner.

¶ 14 Paragraph 8(b) of the lease pertains to the "taxes, assessments, liens, encumbrances, levies and other charges against the Land." This is a very specific provision that specifically itemizes taxes assessed against the property. The last sentence of paragraph 4 is mirrored in section 8(b), concluding that SSLP's obligation regarding increases in assessed real estate taxes is limited to those "directly attributable to improvements made by SSLP." This specific contract provision is entitled to more weight than the general provision of paragraph 4 when determining the parties' intent. See *Donahue*, 328 Ill. App. 3d at 166. If this court were to accept Petroff's harmonious interpretation argument, paragraph 8(b) would be rendered meaningless. Therefore, the trial court correctly determined that the language of the contract, when read as a whole, was unambiguous.

¶ 15 Petroff next argues that if paragraph 8(b) is not subsumed into paragraph 4, then an ambiguity exists. A contract does not become ambiguous, however, simply because the parties disagree upon the interpretation of the contract's provisions. *Hillenbrand v. Meyer Medical Group, S.C.*, 288 Ill. App. 3d 871, 875-76 (1997). Rather, an ambiguity exists if the contract contains language that is susceptible to more than one reasonable interpretation. *Hillenbrand*, 288 Ill. App. 3d at 876; *Cook v. Board of Education of Eldorado Community Unit School District No. 4*, 354 Ill. App. 3d 256, 264 (2004). Petroff's interpretation of the lease would lead to an absurd result, as he could develop his entire parcel of land, separate and apart from the land used for the cell phone tower, and

7

pass along the associated increases in real estate taxes to the defendants. This example illustrates that such a result could not have been the intent of the parties and provides further support for the lack of ambiguity in the contract terms.

¶ 16 Finally, we note that Petroff claims the trial court improperly found that the lease was a "gross lease," as set forth in paragraph 4 of the lease agreement. Under a gross lease, "the lessee pays a flat amount for rent, out of which the lessor pays all the expenses." See Lease, Black's Law Dictionary (11th ed. 2019). Unlike a pure gross lease, the lease at issue here obligated the defendants to pay for rent and those increases in real estate taxes directly attributable to improvements made by the defendants. While Petroff correctly asserts that the lease is more properly viewed as a "modified gross lease," this distinction is inconsequential to the resolution of this appeal. The specific nomenclature assigned to the lease in this case does not change the interpretation of the terms of the lease, or the obligations of the parties under the lease. Although the trial court may have incorrectly viewed this lease as a gross lease, we agree with the trial court that the language of the lease was unambiguous, and that the defendants were only obligated to pay for any increases in real estate taxes on the leased premises directly attributable to the improvements made by the defendants.

¶ 17 For the foregoing reasons, the trial court's order is affirmed.

¶ 18 Affirmed.