2022 IL App (1st) 210680-U

SECOND DIVISION
December 30, 2022

No. 1-21-0680

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| LAURIN STARCK, BRANDON STARCK, and CARA MENZIES, not individually but as the Independent Administrator of the Estate of Jeffrey Starck, deceased, and as parent and representative of two minor children of Jeffrey Starck pursuant to Article 7, Section 22 of the Walter J. Starck Trust, | ) ) ) ) ) ) ) | Appeal from the Circuit Court of Cook County |
| | ) | |
| Plaintiffs-Appellants, | ) | 20 L 12618 |
| | ) | |
| v. | ) ) | Honorable Margaret Ann Brennan, |
| SAUL EWING ARNSTEIN & LEHR, LLP and JAY P. TARSHIS, | ) ) | Judge Presiding |
| | ) | |
| Defendants-Appellees. | ) | |

_____

JUSTICE ELLIS delivered the judgment of the court.
Justices Howse and Cobbs concurred in the judgment.

**ORDER**

¶ 1    *Held*: Affirmed. Complaint for legal malpractice and tortious interference with inheritance expectancy was time-barred under Probate Act.

¶ 2    Defendants, a law firm and an individual lawyer in the firm, drafted a Will and Trust for plaintiffs' father that effectively disinherited plaintiffs from his estate. Plaintiffs contested the Will and Trust after they were submitted to probate; that challenge ultimately led to a settlement that gave each plaintiff a portion of the estate. Following settlement, they sued defendants,

alleging legal malpractice and aiding and abetting / tortious interference with inheritance expectancy. The circuit court dismissed the first claim, finding that only plaintiffs' father was the client with regard to the Will and Trust, and thus defendants did not owe the plaintiff children a duty. It also determined that both claims were barred, as the court lacked jurisdiction to upset a settled estate.

¶ 3     We agree with the circuit court that both of plaintiffs' claims are barred by the jurisdictional limit contained in the Probate Act. We thus affirm on that ground.

¶ 4                              BACKGROUND

¶ 5      We draw our facts from the allegations of the complaint, which we accept as true at this stage. *In re Estate of Powell*, 2014 IL 115997, ¶ 12.

¶ 6     Walter Starck, known as "Skip," was an attorney and partner at defendant Saul Ewing Arnstein & Lehr, LLP (the Firm). From 1973 to 1996, Skip was married to Shirley Starck. The couple had three children: Laurin, Brandon, and Jeffrey Starck. Plaintiffs are Laurin and Brandon, individually, along with Jeffrey's estate.

¶ 7     Shirley allegedly suffered from a severe gambling addiction that has led to serious tax and other financial difficulties. After she and Skip divorced, he "felt sorry for her" and allowed her to live at his home. He also provided a small stipend so she could support herself. This arrangement lasted until Skip's death.

¶ 8     Near the end of 2018, Skip's health began to deteriorate rapidly. On November 2, Skip had an unsuccessful surgery for a bowel obstruction. As his health continued to decline, he underwent a second emergency surgery for the obstruction two weeks later. Skip's health deteriorated further through the end of the month. During this time, Skip recognized his visitors

but "was not able to converse clearly" with them. On at least one occasion, he could not recognize his granddaughter.

¶ 9 Because of his rapidly deteriorating situation, on November 28, Skip told Laurin that he wanted Powers of Attorney (POAs) drafted. With great difficulty, Skip was able to tell Laurin to contact his colleague at the Firm, defendant Jay Tarshis, to help draft them. The initial plan was to grant Laurin the POAs for both Skip's property and medical decisions. But Laurin "did not feel that she was emotionally able" to make Skip's medical decisions, so she suggested appointing Shirley as the medical POA. The next day, Tarshis sent over the separate POAs, and Skip signed them.

¶ 10 While Laurin was discussing the POAs with Tarshis, she asked him to look into whether Skip had executed any estate planning documents. Tarshis was not able to discover any. Despite the lack of any formal estate planning, the complaint alleges that Skip told his children a year before, via text message, that he intended to split his estate equally between the three of them. (A copy of the text message is included in the record.)

¶ 11 Between December 4 and 6, Laurin was in San Francisco for a business trip. On December 5, Tarshis prepared a Will and Trust based on a phone call he had with Shirley and Skip. According to the complaint, "Tarshis said he believed he was talking to both [Shirley] and Skip, but that somebody whom Tarshis believed to be Skip could only grunt during the conversation and only [Shirley] spoke during the call."

¶ 12 In apparent conflict with his oral wishes the year before, Tarshis drafted a Will that placed everything into a Trust. Under the Trust documents, Shirley was entitled to the use and control of the estate's property. While specifics are not necessary for our decision, the documents left Shirley as the sole beneficiary of the trust during her lifetime. The complaint alleges that

there was a significant chance the children would effectively lose their inheritance: "Tarshis warned that substantially all of Skip's liquid assets were tax-qualified retirement benefits and cautioned that if those benefits were not managed carefully, there might not be enough cash to pay the Stipend to [Shirley] and to pay the Residence expenses."

¶ 13    Laurin was unaware that Tarshis and Shirley had been discussing the estate plans without her since November 30. She was also unaware of the December 5 meeting and the executed documents until she returned home from her trip. On December 7, she contacted Tarshis and expressed her concern that the drafted documents did not accurately reflect Skip's intent. Tarshis immediately sent an email to schedule a meeting between himself, Skip, Laurin, and Shirley. Shirley cancelled the first meeting because Skip was not well enough to meet.

¶ 14    Tarshis finally visited Skip in the hospital on December 13. Laurin, Shirley, and Skip's brother were also there, but Skip was not awake. "During the entire time Tarshis was near Skip on December 13, 2018, Skip and [*sic*] was not able to, and did not, communicate with Tarshis or anyone else." The complaint alleges that Tarshis left once he discovered how ill Skip was.

¶ 15    During this entire ordeal, Skip's health continued to worsen. For example, on December 2, three days before Skip allegedly had the phone call with Tarshis, he "could only stare blankly at [his brother] and did not respond." Around December 10, Skip entered hospice care. He died on December 19.

¶ 16    The December 5 Will and Trust were submitted to probate in early 2019. The plaintiffs quickly filed a will contest, claiming that Shirley unduly influenced the creation of an estate plan which left her everything. Shirley and the estate were represented by the Firm. In March 2020, plaintiffs and Shirley settled the probate litigation to reform the Trust and split what remained of Skip's estate equally—25% each to Shirley and the three plaintiffs.

¶ 17    In November 2020, plaintiffs filed this suit against the Firm and Tarshis. They pleaded two counts in the alternative.

¶ 18    Count I sounds in legal malpractice, alleging that "[b]y no later than November 29, 2018, Laurin Starck had retained Defendants on her behalf in her capacity as power of attorney for Skip relative to, *inter alia*, Skip's estate planning." The complaint alleges that defendants owed a duty to plaintiffs because they were "the direct intended beneficiaries of Laurin's power of attorney over Skip." Plaintiffs claim defendants breached their duties by failing to discuss the estate planning with Laurin (who had POA over Skip's property), failing to recognize that Skip lacked testamentary capacity, and preparing the Will and Trust at Shirley's direction. As damages, they sought "the diminution of their respective intestacy interests in Skip's estate."

¶ 19    As for Count II, titled "Tortious Interference / Aiding and Abetting," plaintiffs claim that defendants knowingly assisted Shirley's undue influence over the creation of Skip's estate documents. Plaintiffs allege that Shirley contrived a situation where the Will and Trust were drafted at her direction, intentionally excluding Laurin (who, again, had the property POA). They claim that defendants "substantially assisted" Shirley's scheme. As for damages, like the malpractice claim, they sought "the diminution of their respective intestacy interests in Skip's estate."

¶ 20    Defendants filed separate motions to dismiss under section 2-615 and 2-619. See 735 ILCS 5/2-615, 2-619 (West 2020). In their section 2-619 motion, they first argued the claims were effectively a will contest, as they relied on Skip's lack of testamentary capacity. Thus, the claims were untimely under the Probate Act, and the court lacked jurisdiction to consider them. Next, they argued the claims were untimely under the special limitations period applicable to attorneys. Third, they contended that settlement of the underlying will contest released the claims

against them. Finally, they argued that Count I lacked merit because the retainer agreement between Tarshis and Skip conclusively proved there was no attorney-client relationship between them and plaintiffs.

¶ 21    The circuit court issued a memorandum order dismissing the claims with prejudice. First, it found that the retainer agreement defeated the malpractice claim and "Plaintiff [*sic*] cannot simply piggyback off of Skip's representation." It also ruled that both counts were barred by the Probate Act because "Plaintiffs could have pursued their claims for both aiding and abetting and negligence through their Petition in the Probate Action but chose to abandon those claims in favor of settlement. Plaintiffs cannot now attempt to invalidate the Will they previously assented to through the Settlement Agreement."

¶ 22    Plaintiffs timely appealed.

¶ 23                              ANALYSIS

¶ 24    Plaintiffs challenge the two bases of the circuit court's decision: lack of attorney-client relationship and the Probate Act bar. We address only the Probate Act bar because we find it dispositive.

¶ 25    The Probate Act provides that an interested person has 6 months to contest the validity of a will after it has been admitted to probate. See 755 ILCS 5/8-1(a) (West 2020). This 6-month limitations period is jurisdictional in nature. *In re Estate of Ellis*, 236 Ill. 2d 45, 50 (2009). If the will is not challenged within this time period, "the validity of the will is established for all purposes." *Id*. "Whether the six-month limitation is applicable to a tort claim is a question of statutory construction subject to *de novo* review." *Id*.

¶ 26    We agree with defendants that the disposition of this appeal is controlled by *Robinson v. First State Bank of Monticello*, 97 Ill. 2d 174 (1983). In simplified terms, the testator there had

left an original will and codicil in 1973 that was later revoked in a document prepared by an attorney named Doss. *Id*. at 176. After that revocation of the 1973 will, the testator executed a new will and codicil that left nearly all of the testator's estate to Doss and disinherited the plaintiffs, who were the testator's family. *Id*. at 175-76. After that new will and codicil was submitted to probate following testator's death, the plaintiffs entered into a settlement agreement with Doss in lieu of a lawsuit, granting them $125,000 from the estate. *Id*. at 176.

¶ 27    About two years after the settlement agreement, the plaintiffs discovered that the 1973 will had existed but then was revoked. *Id*. at 178. They filed a complaint, directing two counts against the executor, alleging that the executor breached its fiduciary duty and was negligent in not disclosing the existence of the revocation document. *Id*. at 180. Count III of the complaint named Doss as a defendant for tortious interference with inheritance expectancy for his role in procuring the new will that gave nearly the entire estate to him. *Id*. at 181.

¶ 28    Our supreme court ultimately held that each of these three counts should be dismissed. As to the claim of tortious interference against the attorney, Doss, the court wrote:

>       "In this case, where a will has been admitted to probate and where the plaintiffs
>       have engaged an attorney to determine whether they should file a will contest, have
>       decided not to contest the will, have entered into a settlement agreement for $125,000
>       ***, and have allowed the statutorily prescribed period in which to contest the will to
>       expire (thereby establishing the validity of the will), we will not recognize a tort action
>       for intentional interference with inheritance." *Id*. at 184.

¶ 29    Nor did the court limit that discussion to the claim of tortious interference:

>       "We believe that *all three counts* should have been dismissed, because underlying
>       the plaintiffs' whole complaint is the necessary determination that the decedent's 1974

will and 1976 codicil that were admitted to probate and became valid under the Probate Act of 1975 are invalid." (Emphasis added.) *Id*. at 183.

¶ 30    The court reasoned that "if we were to allow the plaintiffs to maintain their tort action, we would be giving them a second bite of the apple and defeating the purpose of the exclusivity of a will contest under section 8–1 [of the Probate Act]." *Id*. at 185. Said differently, "to allow the complaint to be filed here would permit the issue of undue influence, which would have been grounds for a will contest, to be litigated years after the will was admitted to probate and immune from contest on this issue." *Id*.

¶ 31    The rule that has developed since *Robinson* is "that the tort action is not available 'where the remedy of a will contest is available and would provide the injured party with adequate relief.' " *Bjork v. O'Meara*, 2013 IL 114044, ¶ 25 (collecting cases).

¶ 32    Plaintiffs' principal distinction of *Robinson* is that here, they did, in fact, file a will contest that ultimately ended in a rather successful settlement that allowed for changes to the trust. Their settlement was post-suit, in other words, while the *Robinson* plaintiffs settled their claim without ever filing a lawsuit.

¶ 33    We do not see any meaningful distinction between settling a claim pre-suit versus doing so after the lawsuit was filed—or between a "successful" settlement versus any other kind. The point of *Robinson* is that the plaintiffs settled their claims, thus allowing the will to become valid, and any later attempt to effectively invalidate that will through a tort action cannot be allowed to stand.

¶ 34    Indeed, we reached the same result, under the same facts present here, in *Phelps v. Land of Lincoln Legal Assistance Foundation, Inc.*, 2016 IL App (5th) 150380. There, the heirs of a testator filed a contest of a will that disinherited them. *Id*. ¶ 4. The plaintiffs later settled their

contest. *Id*. They then filed a separate suit, naming the attorneys who drafted the will, alleging breach of fiduciary duty, legal malpractice, and tortious interference with expectancy. *Id*. ¶¶ 5, 7.

¶ 35    We found the facts of that case "nearly identical to those set forth in *Robinson*." *Id*. ¶ 33. The fact that plaintiffs had settled after filing a will contest, as opposed to settlement before filing such a suit, did not alter the equation; as we noted there, the critical fact was that the plaintiffs "chose to settle that action short of reaching the will's invalidity," and "[a]s a result, the will was admitted to probate, thereby establishing the validity of the will." *Id*. ¶ 34. As such, we found that "the declaration of the supreme court in *Robinson* controls our disposition ***." *Id*.

¶ 36    Further attempting to distance this case from *Robinson*, plaintiffs claim that they are not trying to invalidate the will. Instead, they say, they are seeking to recover damages caused by defendants' tortious interference (or, alternatively, their legal malpractice), including "the legal fees and costs [p]laintiffs were forced to expend in the Probate Case." Unfortunately, there are two problems with this argument.

¶ 37    The first is that, while we understand that plaintiffs here do not explicitly seek the invalidation of the Will and Trust, the gravamen of their claims is the presence of undue influence. Defendants, in fact, go so far as to claim that the complaint here contains "over 90% of the underlying allegations in the Petition to Contest Skip's Will." We have not done the math, but we agree that the entire thrust of the complaint is that Skip was subjected to undue influence in executing the Will and Trust that was submitted to probate. And *Robinson* makes clear that plaintiffs cannot use this second lawsuit to relitigate the question of undue influence. See *Robinson*, 97 Ill. 2d at 185 ("to allow the complaint to be filed here would permit the issue of undue influence, which would have been grounds for a will contest, to be litigated years after the will was admitted to probate and immune from contest on this issue.").

¶ 38    The second is that, however plaintiffs characterize their requested relief before this court, it is not how they characterized it in their complaint. Both counts of the complaint allege the following damages: "As a direct and proximate cause of the foregoing, Plaintiffs were injured and suffered damages by the diminution of their respective intestacy interests in Skip's estate over and above what could reasonably be obtained by reforming Skip's Trust with the probate court's approval." In other words, the complaint alleges as damages the difference between what plaintiffs believe they should have received from Skip's estate (33% for each plaintiff), but for the undue influence, and what they actually received (25% each).

¶ 39    In any event, however plaintiffs characterize their relief, it would be impossible to rule in their favor without first determining that the original will was invalid due to undue influence, an issue that has already been fully litigated and conclusively resolved. See *id*.

¶ 40    We are thus bound to follow *Robinson*. And that decision bars both claims alleged here— legal malpractice and tortious interference with inheritance expectancy. *Robinson* itself applied its holding not only to the tortious interference count but also to the counts alleging the torts of breach of fiduciary duty and negligence. See *id*. at 183. The critical takeaway is that a tort action may not lie to relitigate a claim of undue influence, as long as the plaintiffs had an opportunity to litigate that question through a will contest but, by inaction or settlement, chose not to litigate that claim to its ultimate merits. See *id*. at 185; *Phelps*, 2016 IL App (5th) 150380, ¶ 34.

¶ 41    We thus find that the circuit court correctly dismissed the complaint in its entirety as time-barred under the Probate Act.

¶ 42                                  CONCLUSION

¶ 43    The circuit court of Cook County is affirmed.

¶ 44    Affirmed.