2024 IL App (1st) 231160-U

No. 1-23-1160

Order filed June 14, 2024

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| THE PATRIOT GROUP, LLC, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 19 L 50563 |
| | ) | |
| HILCO TRADING, LLC, | ) | Honorable |
| | ) | Daniel P. Duffy, |
| Defendant-Appellee. | ) | Judge Presiding. |

JUSTICE NAVARRO delivered the judgment of the court.
Presiding Justice Mitchell and Justice Mikva concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We affirm the circuit court's dismissal of The Patriot Group, LLC's amended complaint where its allegations are insufficient to state a veil-piercing claim against Hilco Trading, LLC, the parent company of Hilco Financial, LLC.

¶ 2    The Patriot Group, LLC (Patriot), obtained a judgment against Hilco Financial, LLC (Hilco Financial), based on a breach of contract for more than $62 million. Because Hilco Financial did not have the funds to satisfy the judgment, Patriot sued the parent company of Hilco Financial, Hilco Trading, LLC (Hilco Trading), under a veil-piercing theory to collect that judgment. On

Hilco Trading's motion, the circuit court dismissed Patriot's amended complaint with prejudice. Patriot now appeals, contending that the court erred in dismissing its claim where it sufficiently alleged that Hilco Financial and Hilco Trading operated as a single economic entity and there was an element of injustice or unfairness that warranted Patriot piercing the veil of Hilco Financial and making Hilco Trading liable for the underlying judgment. For the reasons that follow, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4      Patriot is a company that provides asset-based financing solutions secured by a wide variety of asset types and products. Hilco Trading is an Illinois-based company that owns, either directly or indirectly, several companies in the business and financial services industries. Directly or through its various subsidiaries, Hilco Trading offers a broad array of services, including merger and acquisition facilitation, inventory appraisals, industrial asset acquisitions and liquidations, and consumer receivables purchases.

¶ 5      In 2004, Hilco Trading formed Hilco Financial as a Delaware limited liability company to focus on asset-based lending, *i.e.*, loans secured by the borrowers' collateral, and extending short-term loans to entities that could not secure financing from traditional sources.[1] Both Hilco Trading and Hilco Financial had their principal place of business at the same address in Northbrook, Illinois. Hilco Trading owned approximately 84% of Hilco Financial. The following year, Hilco Financial was capitalized through: (1) a $30 million senior secured facility provided by two banks; (2) a $20 million junior secured mezzanine facility provided by Patriot under a subordinated credit agreement; and (3) a $5 million equity contribution from Hilco Trading. According to the operative

---

[1] Hilco Financial later became known as 1310 Financial, LLC, but we will refer to the company as Hilco Financial in this appeal.

amended complaint in the instant case, in courting the financing from Patriot, an executive of Hilco Trading indicated that the company would closely supervise the operations of Hilco Financial.

¶ 6 According to Hilco Financial's 2006 amended and restated limited liability company agreement, Hilco Trading was the managing member of Hilco Financial. Although the agreement provided that Hilco Trading would have the exclusive authority to manage and control the company, the agreement delegated the day-to-day operations to a chief executive officer. In addition, Hilco Financial could not perform several actions without the written consent of Hilco Trading, as managing member, including: (1) borrowing more than $100,000; (2) granting security interests in any of its assets; (3) litigating or settling claims; or (4) hiring or firing officers or employees. Hilco Trading also was required to establish a yearly budget for Hilco Financial and had the authority to appoint or revoke authorized signatories on Hilco Financial's behalf.

¶ 7 In 2007, Patriot and Hilco Financial amended their subordinated credit agreement, which increased the credit facility to $30 million. Under the original and amended agreements, Patriot contracted only with Hilco Financial, and not Hilco Trading. Additionally, Patriot had to approve the third-party loans originated by Hilco Financial. By 2008, the majority of the loans in Hilco Financial's portfolio were in default, which caused the company to default on its credit facility from Patriot. Shortly after, Hilco Financial ceased operations and surrendered possession of its assets to its senior lender, a bank that had replaced the original two senior lending banks.

¶ 8                             A. The Underlying Litigation

¶ 9 In 2010, Patriot sued Hilco Financial, Hilco Trading and other Hilco entities under various causes of action in connection with the subordinated credit agreement and amended subordinated credit agreement. Eventually, in June 2011, Patriot filed a second amended complaint. In short, that pleading alleged a concerted effort by the various Hilco entities to induce Patriot into

providing subordinated credit to fund Hilco Financial and approve risky third-party loans through misrepresentations, fraudulent financial documents, and inflated appraisals.

¶ 10    Following a stipulated order, in which Patriot agreed to dismiss certain claims with and without prejudice, and Hilco Trading agreed to withdraw its motion to dismiss on certain claims, Patriot's remaining claims were against: (1) Hilco Financial for breach of the amended subordinated credit agreement and fraud; (2) Hilco Trading for fraud, fraudulent transfer and constructive fraudulent transfer; (3) Hilco entities involved in appraisals (the Hilco Appraisal Entities) for negligent misrepresentation; and (4) Hilco, Inc., another member of Hilco Financial, for constructive fraudulent transfer. One of the claims that Patriot agreed to dismiss without prejudice was a veil-piercing claim against Hilco Trading.

¶ 11    Beginning in late 2015, the parties filed various motions for summary judgment. Ultimately, the circuit court granted Patriot summary judgment on its breach of contract claim against Hilco Financial in an amount to be determined later at a prove-up. The court, however, granted summary judgment to Hilco Financial on Patriot's fraud claim. The court granted Hilco Trading summary judgment on Patriot's claims of fraud, fraudulent transfer and constructive fraudulent transfer. Finally, the court granted the Hilco Appraisal Entities summary judgment on Patriot's negligent misrepresentation claim and Hilco, Inc., summary judgment on Patriot's constructive fraudulent transfer claim.

¶ 12    Patriot appealed, challenging the circuit court's grant of summary judgment to Hilco Trading and Hilco Financial on its fraud claims as well as the court's grant of summary judgment to the Hilco Appraisal Entities on its negligent misrepresentation claim. In September 2018, this court affirmed the circuit court's grant of summary judgment to the Hilco entities. See *Patriot Group, LLC v. Hilco Financial, LLC*, 2018 IL App (1st) 170345-U.

¶ 13                                    B. The Instant Litigation

¶ 14    In June 2019, the circuit court entered a judgment in favor of Patriot on its breach of contract claim against Hilco Financial in the amount of $62,335,460 with postjudgment interest. When Hilco Financial indicated it could not pay the judgment, Patriot sued Hilco Trading under a veil-piercing theory to collect the judgment entered against Hilco Financial. Hilco Trading moved to dismiss Patriot's complaint under section 2-615 and section 2-619(a)(4) of the Code of Civil Procedure (Code) (735 ILCS 5/2-615, 2-619(a)(4) (West 2020)), the latter based on collateral estoppel. The circuit court denied Hilco Trading's motion on the issue of collateral estoppel, but granted the motion under section 2-615 without prejudice because Patriot's allegations were insufficient to state a claim for veil-piercing.

¶ 15    In July 2021, Patriot filed the operative amended complaint against Hilco Trading. Patriot posited that Hilco Trading and Hilco Financial operated as a single economic entity and Hilco Financial was merely the alter ego of Hilco Trading. In turn, Patriot asserted that Hilco Trading was responsible for Hilco Financial's liabilities and obligations, including the approximately $62 million monetary judgment in the underlying litigation.

¶ 16    Hilco Trading again moved to dismiss Patriot's amended complaint pursuant to section 2-615 and section 2-619(a)(4) of the Code (*id.*). Under section 2-615, Hilco Trading contended that Patriot's amended complaint was legally deficient and warranted dismissal. Under section 2-619(a)(4), Hilco Trading contended that several allegations contained in Patriot's amended complaint were barred by collateral estoppel in light of the underlying litigation and had to be stricken. Hilco Trading asserted that, stripped of these allegations, Patriot's amended complaint was simply a rehashing of the same allegations in the initial complaint, which the circuit court already found insufficient to state a claim for veil-piercing, thus similarly warranting dismissal.

¶ 17    Following briefing, the circuit court granted Hilco Trading's motion pursuant to section 2-615 with prejudice, finding that Patriot's allegations were insufficient to state a cause of action for veil-piercing. The court denied Hilco Trading's motion to dismiss under section 2-619(a)(4) as moot.

¶ 18    This appeal followed.

¶ 19                                    II. ANALYSIS

¶ 20    Patriot contends that the circuit court erred in dismissing its amended complaint pursuant to section 2-615 of the Code (*id.*). Specifically, Patriot argues that its amended complaint sufficiently alleged that Hilco Financial and Hilco Trading operated as a single economic entity and there was an element of injustice or unfairness involved in order to pierce the veil of Hilco Financial and make Hilco Trading liable for the underlying monetary judgment.

¶ 21    A section 2-615 motion to dismiss challenges the "legal sufficiency" of the complaint. *Henderson Square Condominium Ass'n v. LAB Townhomes, LLC*, 2015 IL 118139, ¶ 61. The critical question "is whether the allegations of the complaint, construed in the light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted." *Id.* In resolving this question, all well-pled facts and reasonable inferences from those facts must be accepted as true. *Nyhammer v. Basta*, 2022 IL 128354, ¶ 23. "A complaint should not be dismissed pursuant to section 2-615 unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery." *Dent v. Constellation NewEnergy, Inc.*, 2022 IL 126795, ¶ 25. Our review of the court's dismissal pursuant to section 2-615 is *de novo*. *Id.*

¶ 22    In the instant case, both parties agree that the substantive law of Delaware applies to Patriot's veil-piercing claim, as that is the state of formation of Hilco Financial, the entity whose veil Patriot attempts to pierce. See *Westmeyer v. Flynn*, 382 Ill. App. 3d 952, 957, 960 (2008).

Under Delaware's Limited Liability Company Act (the LLC Act), as a general matter and absent an agreement:

"the debts, obligations and liabilities of a limited liability company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the limited liability company, and no member or manager of a limited liability company shall be obligated personally for any such debt, obligation or liability of the limited liability company solely by reason of being a member or acting as a manager of the limited liability company." Del. Code Ann. tit. 6, § 18-303.

However, the doctrine of piercing the corporate veil, which applies to limited liability companies in Delaware (see *Westmeyer*, 382 Ill. App. 3d at 960), allows "creditors to reach the assets of the owners of the entity." *Feeley v. NHAOCG, LLC*, 62 A.3d 649, 667 (Del. Ch. 2012).

¶ 23     Despite the existence of the veil-piercing doctrine, Delaware law strongly enforces the separate legal existence of limited liability companies. *Verdantus Advisors, LLC v. Parker Infrastructure Partners, LLC*, No. 2020-0194-KSJM, 2022 WL 611274, at *2 (Del. Ch. Mar. 2, 2022). In turn, "[v]eil piercing is a tough thing to plead and a tougher thing to get, and for good reason," as "Delaware is in the business of forming entities." *Id.* "[O]nly in exceptional circumstances" does Delaware law disregard the separate legal existence of a limited liability company and allow its veil to be pierced. *Cleveland-Cliffs Burns Harbor LLC v. Boomerang Tube, LLC*, No. 2022-0378-LWW, 2023 WL 5688392, at *4 (Del. Ch. Sept. 5, 2023).

¶ 24     As Patriot claimed in its amended complaint that Hilco Financial was merely the alter ego of Hilco Trading, there had to be sufficient allegations therein that Hilco Trading and Hilco Financial "operate[d] as a single economic entity such that it would be inequitable *** to uphold a legal distinction between them." (Internal quotation marks omitted.) *Id.* at *5. Under the alter-

ego doctrine, "the subsidiary must be a sham and exist for no other purpose than as a vehicle for fraud." (Internal quotation marks omitted.) *Id.* There are several factors used to determine whether two entities operated as a single economic entity: "(1) whether the company was adequately capitalized for the undertaking; (2) whether the company was solvent; (3) whether corporate formalities were observed; (4) whether the dominant shareholder siphoned company funds; and (5) whether, in general, the company simply functioned as a façade for the dominant shareholder." (Internal quotation marks omitted.) *Verdantus*, 2022 WL 611274, at *2. No single factor is dispositive. *Cleveland-Cliffs*, 2023 WL 5688392, at *5. Instead, the "ultimate decision regarding veil-piercing is largely based on some combination of these factors, in addition to an overall element of injustice or unfairness." (Internal quotation marks omitted.) *Id.*

¶ 25                          A. Hilco Financial's Capitalization

¶ 26    First, we must determine whether Patriot sufficiently alleged that Hilco Financial was undercapitalized for its business undertaking. According to Patriot's amended complaint, Hilco Financial was undercapitalized where its debt-to-equity ratio was 10:1 given its $50 million in debt compared to the $5 million equity contribution by Hilco Trading, and Hilco Trading's $5 million equity contribution was unreasonably low in light of Hilco Financial's high-risk lending enterprise.

¶ 27    As a preliminary matter, "undercapitalization is rarely sufficient to pierce the corporate veil, because otherwise" every subsidiary that becomes insolvent or every start-up corporation that fails would be pierced. *In re BH S & B Holdings LLC*, 420 B.R. 112, 136 (Bankr. S.D.N.Y. 2009) (applying Delaware law), *aff'd as modified*, 807 F. Supp. 2d 199 (S.D.N.Y. 2011). Nevertheless, when analyzing whether a subsidiary was undercapitalized for its business enterprise, our focus is "on the initial capitalization: 'whether a corporate entity was or was not set up for financial failure.' " *Id.* (quoting *George Hyman Construction Co. v. Gateman,* 16 F. Supp. 2d 129, 152-53 (D. Mass.

1998)). Being set up for failure generally means whether the company has failed to put in reserve unencumbered capital reasonably sufficient to cover the entity's prospective liabilities. *Id.* at 136-37. " '[T]he inquiry into corporate capitalization is most relevant for the inference it provides into whether the corporation was established to defraud its creditors or other improper purpose such as avoiding the risks known to be attendant to a type of business.' " *Trevino v. Merscorp, Inc.*, 583 F. Supp. 2d 521, 530 (D. Del. 2008) (quoting *Trustees of National Elevator Industry Pension, Health Benefit and Educational Funds v. Lutyk*, 332 F.3d 188, 197 (3d Cir. 2003)).

¶ 28 Although in its amended complaint, Patriot claims that Hilco Financial was undercapitalized, Patriot concedes that, in 2004, Hilco Financial was formed for a legitimate purpose, which was to provide loans to entities that had difficulty borrowing from traditional sources. By conceding that Hilco Financial was formed for a legitimate purpose, Patriot has undermined its assertion that Hilco Financial was undercapitalized. See *id.* at 530-32 (dismissing a veil-piercing claim, in part, where the plaintiffs conceded in their complaint that a subsidiary "was established for a *legitimate* purpose") (Emphasis in original). Regardless, Patriot's assertion that Hilco Trading's $5 million equity contribution to Hilco Financial was unreasonably low in light of Hilco Financial's high-risk lending enterprise is conclusory, and therefore need not be accepted as true for purposes of a motion to dismiss. See *Coghlan v. Beck*, 2013 IL App (1st) 120891, ¶ 35. And while Patriot claims that Hilco Financial's debt-to-equity ratio of 10:1 shows that it was undercapitalized, without additional supporting factual allegations, this assertion does not sufficiently show that Hilco Financial was set up for failure. See *In re BH S*, 420 B.R. at 136.

¶ 29 Furthermore, Patriot repeatedly cites *Boeing Co. v. KB Yuzhnoye*, No. CV 13-00730-AB (AJWx), 2016 WL 2851297 (C.D. Cal. May 13, 2016), to show that it alleged sufficient facts to establish Hilco Financial was undercapitalized. However, in *Boeing*, the company at issue

launched satellites, and was capitalized with only $100 and a promise of a $200 million revolving line of credit that never came through. *Id.* at *17. As a result, the only financing to the satellite company came from its parent company on an emergency basis. *Id.* Given this, the federal district court observed that the subsidiary was "in a business that requires a huge amount of capital; yet, [it] ha[d] no capital except that which [its parent]" gave, resulting in the subsidiary being "wholly undercapitalized." *Id.* at *25. This pales in comparison to the instant case where Hilco Financial was initially capitalized with $55 million, the vast majority of which did not come from Hilco Trading, its parent company. Consequently, Patriot's allegations are insufficient to demonstrate that Hilco Financial was undercapitalized for its business enterprise.

¶ 30                         B. Hilco Financial's Insolvency

¶ 31    Second, we must determine whether Patriot sufficiently alleged that Hilco Financial was insolvent. "A[n entity] may be insolvent under Delaware law either when its liabilities exceed its assets, or when it is unable to pay its debts as they come due." *SV Investment Partners, LLC v. ThoughtWorks, Inc.*, 7 A.3d 973, 987 (Del. Ch. 2010), *aff'd*, 37 A.3d 205 (Del. 2011).

¶ 32    According to Patriot's amended complaint, by January 11, 2008, Hilco Financial was insolvent. Supporting this conclusion, Patriot alleged that, in February 2008, Hilco Financial disclosed to Patriot that most of the loans in its portfolio were in default, and the following month, Hilco Financial ceased payments to Patriot, which were required under the amended subordinated credit agreement. Hilco Trading, however, citing to various decisions that do not apply Delaware law, posits that the relevant period for viewing Hilco Financial's fiscal condition was when Hilco Financial and Patriot entered into the subordinated credit agreement in November 2005 and the amended subordinated credit agreement in September 2007. To this end, Hilco Trading argues that Patriot's allegations did not show that Hilco Financial was insolvent at those times. However, in

citing to decisions that do not apply Delaware law, Hilco Trading tacitly acknowledges that no decision applying Delaware law has applied such a temporal requirement.

¶ 33    In fact, in the recent decision of *Cleveland-Cliffs*, 2023 WL 5688392, the Delaware Court of Chancery did not analyze a company's alleged insolvency at the time of purported transactions with a creditor. There, Boomerang Tube, LLC, purchased more than $7 million in goods from ArcelorMittal Burns Harbor LLC and ArcelorMittal USA LLC between June and November 2020, but then failed to pay the associated invoices. *Id.* at *1-2. Thereafter, Cleveland-Cliffs Burns Harbor LLC and Cleveland-Cliffs Steel LLC purchased the ArcelorMittal entities and became the successors-in-interest to the unpaid invoices of Boomerang. *Id.* at *2. In January 2021, the assets of Boomerang were sold at a public auction pursuant to Article 9 of New York's Uniform Commercial Code. *Id.* Later, the Cleveland-Cliffs entities sued Boomerang's parent company under a veil-piercing theory to collect what they were owed. *Id.* at *3-4. In analyzing the veil-piercing claim, the court observed that "[o]nly the second factor," *i.e.*, insolvency, was "satisfied as to Boomerang, which was left insolvent after the Article 9 sale." *Id.* at *5. In other words, the court examined Boomerang's insolvency for purposes of veil-piercing not at the time of the transaction with the ArcelorMittal entities, but rather following the Article 9 sale. *Id.*

¶ 34    Because we are applying Delaware law in this veil-piercing action and, likewise to our knowledge, no Delaware court has mandated such a temporal requirement, we will not apply one. As such, when viewing Patriot's assertions that, in February 2008, Hilco Financial informed Patriot that most of the loans in its portfolio had defaulted and, the following month, Hilco Financial ceased payments to Patriot under the amended subordinated credit agreement, Patriot sufficiently alleged that Hilco Financial became insolvent in January 2008. See *ThoughtWorks*, 7

A.3d at 987 ("A[n entity] may be insolvent under Delaware law either when its liabilities exceed its assets, or when it is unable to pay its debts as they come due.").

¶ 35                    C. Corporate Formalities

¶ 36    Third, we must determine whether Patriot sufficiently alleged that Hilco Financial failed to observe corporate formalities, which, in this context, means formalities required of a limited liability company, as Hilco Financial was such an entity, not a corporation.

¶ 37    In Patriot's amended complaint, it asserted that Hilco Trading ignored such formalities in its operation of Hilco Financial. In particular, the amended complaint alleged that Hilco Trading and Hilco Financial shared key leadership and operated out of the same offices. The amended complaint further asserted that Hilco Trading had the exclusive authority to manage and control Hilco Financial, and Hilco Trading directed all of Hilco Financial's activities. For example, according to the amended complaint, Hilco Trading prepared all of Hilco Financial's important financial documents, vetted and approved all of Hilco Financial's loans, exercised control over Hilco Financial's funds, and directed related Hilco entities to appraise all assets secured by Hilco Financial's loans. Additionally, the amended complaint asserted that, in soliciting Patriot to provide funding to Hilco Financial, Hilco Trading represented that it would closely supervise Hilco Financial's operations.

¶ 38    A limited liability company has "few statutorily mandated formalities." *Verdantus*, 2022 WL 611274, at *2. Given this, "[i]n the alter-ego analysis of an LLC, somewhat less emphasis is placed on whether the LLC observed internal formalities because fewer such formalities are legally required." *NetJets Aviation, Inc. v. LHC Communications, LLC*, 537 F.3d 168, 178 (2d Cir. 2008) (applying Delaware law). Despite Patriot's various allegations about Hilco Financial's operations,

none of those allegations demonstrate that Hilco Financial violated what was required of it under the LLC Act (Del. Code Ann. tit. 6, § 18-101 *et seq.*)

¶ 39    Many of Patriot's allegations involve Hilco Trading's management and control of Hilco Financial. But, as Hilco Trading points out, Hilco Trading was the managing member of Hilco Financial, and the LLC Act allows an entity to be both a member and manager of a limited liability company. See *id.* § 18-403; *Feeley*, 62 A.3d at 662 (observing that, "[u]nder the LLC Act, there are two basic types of members," including "members who are also managers and exercise managerial functions in a member-managed LLC"). And "more often than not, Delaware courts have upheld the legal significance of corporate form, in a corporate-subsidiary complex, despite the fact of substantial overlap in the management and control of the two entities." *Leslie v. Telephonics Office Technologies, Inc.*, No. CIV. A. 13045, 1993 WL 547188, at *8 (Del. Ch. Dec. 30, 1993). Moreover, merely because a parent and subsidiary share employees or an office, that is not enough to pierce the subsidiary's veil. See *VFS Financial, Inc. v. Falcon Fifty LLC*, 17 F. Supp. 3d 372, 383-84 (S.D.N.Y. 2014) (applying Delaware law and finding that "the mere fact that a subsidiary shares employees, officers, and directors with a parent does not permit the corporate form to be disregarded") (Internal quotation marks omitted.); *Capmark Financial Group Inc. v. Goldman Sachs Credit Partners L.P.*, 491 B.R. 335, 350 (S.D.N.Y. 2013) (applying Delaware law and concluding "[t]hat a subsidiary shares employees, officers, and directors with a parent does not permit the corporate form to be disregarded").

¶ 40    While in the amended complaint, Patriot points to Hilco Financial's limited liability company agreement to show that significant decisions had to be approved by Hilco Trading, such approval does not demonstrate that Hilco Financial lacked appropriate operating formalities or that the two entities were a single economic entity. See *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1459-60

(2d Cir. 1995) (where a parent company had to approve "real estate leases, major capital expenditures, negotiations for a sale of minority stock ownership to [another company], or the fact that [the parent company] played a significant role in the ultimate sale of [the subsidiary's] assets to a third party," the Second Circuit Court of Appeals observed, in applying Delaware law, that such "conduct is typical of a majority shareholder or parent corporation").

¶ 41    In a corporation, examples of corporate formalities are "whether dividends were paid, corporate records kept, [and whether] officers and directors function[ed] properly." (Internal quotation marks omitted.) *Maloney-Refaie v. Bridge at School, Inc.*, 958 A.2d 871, 881 (Del. Ch. 2008). Patriot's allegations do not show that Hilco Financial failed to follow any analogous formalities required of a limited liability company under the LLC Act (Del. Code Ann. tit. 6, § 18-101 *et seq.*) and do not show that Hilco Trading and Hilco Financial operated in manner atypical of a parent-subsidiary relationship. Consequently, Patriot's allegations are insufficient to demonstrate that Hilco Financial failed to observe required formalities.

¶ 42                       D. Siphoning of Company Funds

¶ 43    Fourth, we must determine whether Patriot sufficiently alleged that Hilco Trading, as the majority member of Hilco Financial, siphoned company funds. According to Patriot's amended complaint, in January 2008, Hilco Trading issued a resolution declaring that Hilco Financial's income for 2007 was expected to be more than $9 million, which resulted in an approximately $3.7 million presumptive tax liability for the members of Hilco Financial. In turn, according to the amended complaint, Hilco Trading caused Hilco Financial to distribute approximately $3.7 million to Hilco Financial's members, the majority of which went to Hilco Trading as the majority member, to cover the estimated tax liability. However, the amended complaint alleged that, despite projecting Hilco Financial's income to be more than $9 million, Hilco Trading knew that Hilco

Financial had actually lost more than $5 million, which was borne out through a revised financial statement in April 2008. As such, the amended complaint claimed that Hilco Financial's approximately $3.7 million distribution was fraudulent and only used by Hilco Trading, as the majority member, to siphon away the remaining assets of Hilco Financial.

¶ 44    "[S]iphoning funds is different than making distributions to members that are permitted by law." *In re The Heritage Organization, L.L.C.*, 413 B.R. 438, 517 n. 69 (Bankr. N.D. Tex. 2009) (applying Delaware law). "Siphoning suggests the improper taking of funds that the owner was not legally entitled to receive." *Id.* Under the LLC Act, a limited liability company may make cash distributions "in the manner provided in a limited liability company agreement." Del. Code Ann. tit. 6, § 18-504. It is not uncommon for a limited liability company's agreement to allow for cash distributions to be made to cover a member's estimated tax liability. See, *e.g.*, *Lion Copolymer Holdings, LLC v. Lion Polymers, LLC*, 614 S.W.3d 729, 731 (Tex. 2020); *Wilson v. Gandis*, 844 S.E.2d 631, 637 (S.C. 2020); *In re SGK Ventures, LLC*, 521 B.R. 842, 859 (Bankr. N.D. Ill. 2014). Nonetheless, the LLC Act generally prohibits a limited liability company from making distributions to a member that would render the company insolvent or while the company is insolvent. Del. Code Ann. tit. 6, § 18-607(a).

¶ 45    Viewing the allegations of the amended complaint alone in the light most favorable to Patriot without any reference to affirmative matters, as we must for purposes of a section 2-615 motion to dismiss (see *Village of Belle Rive v. Illinois Central R.R. Co.*, 2018 IL App (5th) 170036, ¶ 9), Patriot alleged sufficient facts to show Hilco Trading siphoned company funds of Hilco Financial in this one instance.[2] As we already concluded that Patriot made a sufficient showing of

_____

[2] Although we find as such, we note that the alleged fraudulent nature of this distribution formed the basis of Patriot's fraudulent transfer and constructive fraudulent transfer claims against Hilco Trading

Hilco Financial's insolvency, Patriot's assertions that, during the same time period, Hilco Trading caused Hilco Financial to distribute approximately $3.7 million in the form of an estimated tax liability to its members sufficiently alleged that the distribution was improper because the distribution caused Hilco Financial to become insolvent or occurred while Hilco Financial was insolvent. See Del. Code Ann. tit. 6, § 18-607(a); *GEBAM, Inc. v. Investment Realty Series I, LLC*, 15 F. Supp. 3d 1311, 1327 (N.D. Ga. 2013) (applying Delaware law and finding where, "some evidence suggests that the Individual Defendants engaged in unauthorized disbursements," that conduct could be considered "a siphoning of corporate funds").

¶ 46                     E. Functioning as a Façade

¶ 47     Fifth, we must determine whether Patriot sufficiently alleged that, in general, Hilco Financial simply functioned as a façade for Hilco Trading, as the majority member. According to Patriot's amended complaint, once many of Hilco Financial's borrowers began defaulting on their loans in 2007, Hilco Trading allegedly prepared false financial statements, compliance certificates and collateral reports on Hilco Financial's behalf. Additionally, the amended complaint alleged that Hilco Trading exercised significant control over Hilco Financial, including approving loans and controlling Hilco Financial's funds. All told, according to the amended complaint, Hilco Trading treated Hilco Financial as an extension of itself rather than a distinct business entity.

¶ 48     In analyzing this factor, Patriot must allege facts showing that Hilco Financial "had no legitimate business operations and was merely a fraudulent corporation." *In re Moll Industries, Inc.*, 454 B.R. 574, 589 (Bankr. D. Del. 2011). The parent company must dominate and control the subsidiary so significantly such that the subsidiary fails to have "legal or independent

---

and Hilco, Inc., in the underlying litigation. Ultimately, the circuit court granted summary judgment to Hilco Trading and Hilco, Inc., on these claims, and Patriot did not appeal those judgments.

significance of its own," *i.e.*, "some sort of elaborate shell game." (Internal quotation marks omitted) *In re BH S & B*, 420 B.R. at 140-41.

¶ 49 As previously noted, Patriot's amended complaint acknowledged that Hilco Trading, either directly or indirectly, offered a broad array of financial and business services, including merger and acquisition facilitation, inventory appraisals, industrial asset acquisitions and liquidations, and consumer receivables purchases. The amended complaint further acknowledged that Hilco Financial was formed to extend credit through short-term loans to companies that had difficulty borrowing from traditional lenders. Generally, such a concession that Hilco Financial and Hilco Trading operated in discrete financial or business spaces would be fatal to Patriot's façade claim. See *In re Moll*, 454 B.R. at 589-90 (applying Delaware law and finding allegations "insufficient to allege that [a subsidiary] was a mere facade for [the parent]" as they "were separate businesses, operating in completely different fields"); *In re Foxmeyer*, 290 B.R. 229, 244 (Bankr. D. Del. 2003) (applying Delaware law and rejecting claim that the subsidiary acted merely as a façade for the parent-holding company where the subsidiary operated a pharmaceutical distribution business and its parent operated "several discrete albeit related healthcare businesses").

¶ 50 Despite this concession, the plaintiff need not allege that the company "was created with fraud or unfairness in mind" but rather "[i]t is sufficient" to allege that company eventually became used in such a manner. *NetJets*, 537 F.3d at 177. Patriot claims that Hilco Financial became a vehicle for fraud based on the allegedly improper distribution from Hilco Financial to its members as well as allegations that Hilco Trading prepared false financial statements, compliance certificates and collateral reports on behalf of Hilco Financial. While these assertions present potential causes of actions against the Hilco entities, as Patriot raised in the underlying litigation, such allegations are insufficient to demonstrate that Hilco Financial was merely a façade for Hilco

Trading.[3] Although Patriot claims that Hilco Trading essentially controlled Hilco Financial with the same people running both companies, Patriot has not alleged anything that the LLC Act does not contemplate by allowing a member-managed limited liability company. See Del. Code Ann. tit. 6, § 18-403; *Feeley*, 62 A.3d at 662. And, as previously discussed, it is not uncommon for a parent and subsidiary to share key leadership, or for a parent to approve critical decisions and policies of a subsidiary. See *VFS Financial*, 17 F. Supp. 3d at 383-84; *Fletcher*, 68 F.3d at 1459-60.

¶ 51     Patriot's allegations show that Hilco Trading exercised some degree of control over Hilco Financial, but those allegations are insufficient to show "exclusive domination and control [ ] to the point" that Hilco Financial "no longer ha[d] legal or independent significance of [its] own." (Internal quotation marks omitted.) *Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*, 752 A.2d 1175, 1184 (Del. Ch. 1999). Moreover, Patriot's amended complaint is replete with concessions that Hilco Financial operated a legitimate business for a period of time, belying any notion that Hilco Financial was a sham and existed for no other purpose than as a vehicle for fraud. See *DG BF, LLC v. Ray*, No. 2020-0459-MTZ, 2021 WL 776742, at *26-28 (Del. Ch. Mar. 1, 2021) (dismissing veil-piercing claim where complaint conceded the subsidiary corporation ran a legitimate business, demonstrating that the subsidiary was not a sham). Consequently, Patriot's allegations are insufficient to demonstrate that, in general, Hilco Financial simply functioned as a façade for Hilco Trading, as the majority member.

---

[3] We again note that, in the underlying litigation, Patriot claimed that Hilco Trading and Hilco Financial committed fraud when they made false statements of material fact though these same financial statements, compliance certificates and collateral reports that overstated the quality of Hilco Financial's investment portfolio and the company's overall financial health. Ultimately, the circuit court granted summary judgment to Hilco Trading and Hilco Financial on these claims, and both judgments were affirmed on appeal in *Patriot*, 2018 IL App (1st) 170345-U.

¶ 52                                    F. Injustice or Unfairness

¶ 53     As previously discussed, in determining whether two companies operated as a single economic entity, no single factor is dispositive, but rather, the "ultimate decision regarding veil-piercing is largely based on some combination of these factors, in addition to an overall element of injustice or unfairness." (Internal quotation marks omitted.) *Cleveland-Cliffs*, 2023 WL 5688392, at *5. As Patriot has sufficiently alleged two of the five factors, we now must determine whether Patriot sufficiently alleged an overall element of injustice or unfairness.

¶ 54     In its amended complaint, Patriot alleged that there was an overall element of injustice or unfairness where it alleged that Hilco Trading repeatedly lied to induce Patriot to lend millions of dollars to Hilco Financial, failing to properly capitalize Hilco Financial and failing to follow proper corporate formalities. The amended complaint claimed that Hilco Financial was purely a mechanism for Hilco Trading to gamble Patriot's money without risk because, if Hilco Financial's loans were successful, Hilco Trading would make money and if Hilco Financial's loans were unsuccessful, Hilco Trading could hide behind the veil of Hilco Financial. In turn, in the amended complaint, Patriot posited that Hilco Financial's limited liability company form was the key to Hilco Trading's "scheme."

¶ 55     As an initial matter, "[a] breach of contract, without more, does not supply the fraud or injustice required to pierce the corporate veil." *Compagnie des Grands Hotels d'Afrique S.A. v. Starman Hotel Holdings LLC*, No. 1:18-cv-00654-SB-SRF, 2023 WL 5095274, at *9 (D. Del. Aug. 8, 2023). "To hold otherwise would render the fraud or injustice element meaningless." *Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260, 268 (D. Del. 1989). And thus, while Patriot's inability to collect a monetary judgment of more than $62 million is, in some sense, an injustice and unfair, it is not the kind of injustice or unfairness contemplated under the veil-piercing

doctrine. *Id.* Rather, the injustice or unfairness must be the result of the abuse of an entity's business form. *Cohen v. Schroeder*, 248 F. Supp. 3d 511, 523 (S.D.N.Y. 2017) (applying Delaware law), *aff'd,* 724 F. App'x 45 (2d Cir. 2018). "In other words, the [entity] effectively must exist as a sham or shell through which [a controlling party] perpetrates injustice." *Id.* The critical inquiry is whether the defendant "abused the corporate form and, through that abuse, perpetrated fraud on an innocent third party." *Doberstein v. G-P Industries, Inc.*, No. 9995-VCP, 2015 WL 6606484, at *4 (Del. Ch. Oct. 30, 2015).

¶ 56    In the instant case, when Patriot entered into the subordinated credit agreement and amended subordinated credit agreement with Hilco Financial in 2005 and 2007, respectively, Patriot knew it was contracting solely with Hilco Financial, and not Hilco Trading, and never sought to obtain a guarantee from Hilco Trading on its credit facility to Hilco Financial. Additionally, Patriot knew that Hilco Financial would be engaged in high-risk lending and its credit facility was subordinate to Hilco Financial's senior lenders. These facts show that, under the veil-piercing principles, Patriot is not purely an innocent third party. Rather, Patriot entered into a high-risk subordinated credit agreement, and when the loans that Hilco Financial originated defaulted, the risks associated with Patriot's lending came to naught. What Patriot has alleged does not sufficiently show that Hilco Trading or Hilco Financial abused its business form and perpetuated a fraud upon Patriot, as an innocent third party. See *id.*

¶ 57    We acknowledge that we found Patriot sufficiently alleged that Hilco Trading siphoned Hilco Financial's company funds in one instance based on the approximately $3.7 million distribution. However, it does not follow that, because Patriot sufficiently alleged a siphoning of company funds in this instance, Patriot sufficiently alleged that the siphoning was fraudulent in nature or that Hilco Financial abused its business form in making that distribution. As noted, the

LLC Act generally prohibits a limited liability company from making distributions to members that would render the company insolvent or while the company is insolvent. Del. Code Ann. tit. 6, § 18-607(a). According to the amended complaint, the approximately $3.7 million distribution, which was to cover the estimated tax liabilities of Hilco Financial's members, was based on Hilco Financial's projected income in 2007 of more than $9 million. As it turns out, however, according to the amended complaint, Hilco Financial actually lost more than $5 million that year, which was allegedly borne out by a revised financial statement in April 2008. The mere fact that an income projection turned out to be wrong and, in hindsight, the distribution was potentially improper under Delaware law does not, in and of itself, show fraud. That is to say, while Patriot may have sufficiently alleged that Hilco Trading siphoned Hilco Financial's funds in this one instance, Patriot has not sufficiently alleged that Hilco Trading or Hilco Financial did so through an abuse of their business form. See *GEBAM*, 15 F. Supp. 3d at 1327 (dismissing a veil-piercing claim where "some evidence suggests that the [defendants] engaged in unauthorized disbursements and *** such conduct amounted to a siphoning of corporate funds," but "there [wa]s no evidence that the [defendants] did this through an abuse of the corporate form"). Consequently, Patriot's allegations are insufficient to show an overall element of injustice or unfairness necessary to pierce Hilco Financial's veil.

¶ 58    Even with Patriot sufficiently alleging two of the five factors to show that Hilco Trading and Hilco Financial operated as a single economic entity, because Patriot's allegations are insufficient to show an overall element of injustice or unfairness, the circuit court properly dismissed Patriot's amended complaint under section 2-615 of the Code (735 ILCS 5/2-615 (West 2020)). See *Cleveland-Cliffs*, 2023 WL 5688392, at *5. Given this conclusion, we need not address

Hilco Trading's alternative basis for dismissal of collateral estoppel under section 2-619(a)(4) of the Code (*id.* § 2-619(a)(4)), which the court denied as moot.

¶ 59                                    III. CONCLUSION

¶ 60    For the reasons stated, we affirm the judgment of the circuit court of Cook County.

¶ 61    Affirmed.